**COLUMBIA RESEARCH CORPORATION and Allerton Pharmacal Corporation, Appellants,**

v.

**Robert H. SCHAFFER, Postmaster of the City of New York, Appellee.**

**No. 282, Docket 24831.**

United States Court of Appeals Second Circuit.

Argued March 27, 1958.

Decided May 13, 1958.

On Petition for Rehearing July 31, 1958.

Philip A. Friedman, Alfange & Friedman, New York City, for plaintiffs-appellants.

Elliot L. Hoffman, Asst. U. S. Atty., Paul W. Williams, U. S. Atty., and Robert J. Ward, Asst. U. S. Atty., S. D. N. Y., New York City, for defendant-appellee.

Before CLARK, Chief Judge, and HAND and LUMBARD, Circuit Judges.

HAND, Circuit Judge.

This is an appeal from an order of Judge Sugarman, denying the plaintiffs' motion for a preliminary injunction and granting the defendant's cross motion for summary judgment dismissing the complaint in an action brought to enjoin the defendant, the Postmaster of the City of New York, from denying the plaintiffs the use of the mails for the distribution of its advertisements, § 1009(b) Title 5 U.S.C.A.

The plaintiffs are distributors of a drug, sold under the name, "Propex Tablets," designed to reduce the weight of those who take it; and the question involved is whether the advertisements issued by the plaintiffs were false within §§ 259 and 732 of Title 39 U.S.C.A. Judge Sugarman found that they did misrepresent the effects of the tablets, and that for this reason the Postmaster of New York was authorized to deny the plaintiffs the use of the mails in that letters addressed to them were to be returned to the local postmaster of the office where they had been posted, for return to the senders with the word, "fraudulent," written or stamped on the outside. For the purposes of this appeal we shall assume that Judge Sugarman's decision was right on the merits, and that we should affirm his judgment except for an objection, raised for the first time on the appeal, which, we think, makes the defendant's order unlawful, and which makes it proper to enter summary judgment for the plaintiffs. Fed.Rules of Civ. Proc., Rule 54(c), 28 U.S.C.A. The objection involves the proper construction of § 1004(c) of the Administrative Procedure Act, Title 5 U.S.C.A. Section 201.1 of Title 39 of the Code of Federal Regulations makes applicable to the Post Office Department the rules of practice therein contained from §§ 201.1 to 201.27; and originally § 201.4 provided that the Assistant Solicitor of the Fraud Division of the Post Office, when he had reason to believe that the mails are "being used in any manner requiring administrative action," should file with the Docket Clerk a complaint, on which the Chief Hearing Examiner should issue a notice to the party charged. Section 201.14–23 provided that the Chief Hearing Examiner should appoint a Hearing Examiner, qualified under § 1010 of the Administrative Procedure Act, who should take the evidence, and file his findings and

conclusions. Section 201.24 allowed either party to appeal to the Solicitor for the Post Office Department, who was authorized by subdivision (h) to "render the Departmental Decision for the Postmaster General who shall make and sign such decision and deliver the same to the Docket Clerk." Before the case here at bar arose these regulations were changed to substitute the Assistant General Counsel of the Fraud Division for the Assistant Solicitor of the Fraud Division, and the General Counsel for the Solicitor, but otherwise the procedure remains as we have stated. No regulation describes what authority the General Counsel has over the Assistant General Counsel of the Fraud Division; but the first is the final judge, or arbiter, of the controversy, and the second initiates the prosecution. The defendant submitted an affidavit of the Deputy General Counsel of the Postmaster, declaring that, in the absence of the General Counsel, he was authorized to perform the duties of the General Counsel; and that "in the handling of all proceedings arising * * * under 39 U.S.C. §§ 259 and 732 there has been and there is a complete and actual separation of investigative and judicial functions * * * and no officer or employee who presides at the reception of evidence or who makes either initial or final agency decisions * * * is subject to or responsible to or subject to the supervision or direction of any officer, employee or agent engaged in the performance or prosecuting functions for said Post Office Department."

The claim at bar turns upon the following language of § 1004(c): "No officer, employee, or agent engaged in the performance of investigative or prosecuting functions for any agency in any case shall, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 1007 of this title except as witness or counsel in public proceedings. This subsection shall not * * * be applicable in any manner to the agency or any member or members of the body comprising the agency." The

defendant's affidavit seeks to show compliance with this requirement in the language just quoted above from the affidavit of the Deputy General Counsel; but we are not satisfied that it is enough that the Assistant General Counsel, on whom § 201.4 of the Regulations imposes the duty of preparing complaints, has in fact no part in the final decision of the General Counsel himself. It would be plainly contrary to the purpose of the section, if the General Counsel prepared the complaint and the Assistant Counsel made the final decision; for the subordinate would then be passing upon the success of what his superior had undertaken. True, the reverse, which is the actual situation, does not present so obvious a fusion of prosecutor and judge; nevertheless, when the subordinate is prosecutor and his superior is judge, it appears to us reasonable to suppose that the prosecutor will be disposed to select such cases as he believes will meet with his superior's approval, and that his discretion may be exercised otherwise than if each was responsible to the Postmaster only by a separate chain of authority. It is of course true that under any possible system of administration in the end there will be the fusion of prosecutor and judge, subject only to the supervision of the courts; but it makes much difference whether it be reserved to the highest level of authority: i. e., to the "agency" itself and it is fairly obvious that Congress had just this in mind when at the end of § 1004(c) it provided that the subsection should not apply to the "agency" or to any of its "members." There alone was the fusion to be permissible.

However, if, contrary to what appears to us its very probable purpose, the section does not forbid the powers of the prosecutor and the judge to interpenetrate: that is, if the prosecutor may be subject to the judge in some specifically declared circumstances, nevertheless, we think that § 1002(a) (1) and (2) require that any such relation, to be valid at all, must be spelled out and published as a regulation, in order that third persons who must comply with orders of the

"agency" may know what they must meet: that is, it must be possible to ascertain from the regulation what protection the "agency" means to give against the bias that any kind of fusion makes possible. On a trial of that issue, as part of the hearing, third persons will be at a handicap; indeed they will in effect be subject to whatever the officials declare to be the day-to-day relations between the two. It is true that the language of the subsection is not as specific as we might wish; but the phrases, "descriptions of central and field organization including delegations by the agency of final authority" and "statements of the general course and method by which its functions are channeled and determined," appear to us to include the intramural relations between prosecutor and judge. As appears in the discussion of Jackson, J., in Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, the Act was chiefly the result of a gathering dissatisfaction with the existing situation in precisely this aspect. "(I)t did not go so far as to require a complete separation of investigating and prosecuting functions from adjudicating functions. But that the safeguards it did set up were intended to ameliorate the evils from the commingling of functions as exemplified here is beyond doubt." (339 U.S. at page 46, 70 S.Ct. at page 452). We read the language of § 1002(a): "No person shall in any manner be required to resort to organization or procedure not so published," as including, not only any affirmative resort, but also any subjection to unpublished procedure. We hold the order at bar invalid for this reason, regardless of whether the chain of subordination to the "agency" of both prosecutor and judge was in fact not sufficiently separated.

Coming then to the decided cases, it is true that Judge Levet in Glanzman v. Schaffer, D.C., 143 F.Supp. 243, 246, held that an affidavit like that filed in the case at bar was enough to comply with the statute. He did not, however, give any reasons for this conclusion, and neither in the notice of appeal nor in the briefs on appeal was the question raised or discussed. In our opinion (2 Cir., 252 F.2d 333, 334), we said "all the issues, save one, raised on these appeals were adequately disposed in the opinion of Judge Levet," so that on the point here involved we stand altogether uncommitted. We cannot understand how it can be thought that the decision of the Court of Appeals for the District of Columbia (Tourlanes Publication Co. v. Summerfield, 98 U.S.App.D.C., 20, 231 F.2d 773) can be thought relevant. On the other hand in Pinkus v. Reilly, D.C., 157 F.Supp. 548, Judge Hartshorne determined that the Post Office Regulations published after December 1, 1954, did not on this issue cover the "organization" of the "agency," as § 1002(a) requires, and that the plaintiff, Pinkus, need not "resort" to it. He reserved the added question, which we have discussed here, whether by a published regulation the "agency" could make an investigating or prosecuting officer subordinate to the deciding officer. As has already appeared we too reserve any final decision as to that, although it seems to us indeed difficult in the situation here presented to forecast how a regulation could be so drafted as to avoid the objection if the Assistant General Counsel remains a subordinate of the General Counsel.

Since we are now holding the order of the General Counsel to be invalid, the plaintiffs proved their claim beyond cavil, and upon such occasions not only should the judgment dismissing the complaint be reversed, but a summary judgment for the plaintiffs may be entered. Fed.Rules of Civ.Proc., Rule 54 (c). Fountain v. Filson, 336 U.S. 681, 683, 69 S.Ct. 754, 93 L.Ed. 971.

Judgment reversed; and a judgment may be entered forbidding the defendant to deny to the plaintiffs the use of the mail for their advertising.

On Petition for Rehearing.

PER CURIAM.

This case is controlled by our ruling in the companion case of Vibra Brush Corp. v. Schaffer, 2 Cir., 256 F.2d 681, where we are holding that a similar

action must be held abated through the resignation of defendant Schaffer as Postmaster at New York City on May 31, 1957, and failure of the plaintiffs to file a timely motion for substitution of a new defendant. Here, unlike the Vibra Brush case, the order below and the appeal came on July 8 and August 16, 1957, respectively, or shortly after, instead of before, Schaffer's resignation. But this would make the application of Rule 25 (d), F.R.Civ.P., only perhaps the clearer, though we incline to think that, since all this occurred within the period when a motion to substitute would have been proper, our Rule 9 more properly applies. In either event, however, the action must abate under Klaw v. Schaffer, 78 S.Ct. 1369, and Glanzman v. Schaffer, 78 S.Ct. 1370.

Our former judgment is withdrawn, the order below is vacated, and the action is remanded to the district court with instructions to dismiss the complaint as abated.

HAND, Circuit Judge.

I concur on the authority of Klaw v. Schaffer and Glanzman v. Schaffer.