**BORG–JOHNSON ELECTRONICS, INC.,**
Plaintiff,

v.

**Robert K. CHRISTENBERRY, Postmaster, New York, N. Y., Defendant.**

United States District Court
S. D. New York.
Jan. 19, 1959.

**748**

Bass & Friend, New York City, for plaintiff, Milton A. Bass, New York City, of counsel.

Arthur H. Christy, U. S. Atty., for S. D. New York, New York City, for defendant Robert J. Ward, Asst. U. S. Atty., New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

These are cross motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A., in an action seeking to enjoin enforcement of a fraud order issued by the Postmaster General. The order directed that mail addressed to the plaintiff corporation be returned to the senders marked "Fraudulent"; and that postal money orders payable to its order be returned to the remitters. Both parties agree that there are no triable issues of fact and that either one or the other is entitled to summary judgment as a matter of law.

The fraud order was issued after an administrative hearing before a representative of the Post Office Department known as the Judicial Officer, at which plaintiff was represented by counsel.[1] At the conclusion of the hearing, the Judicial Officer found that plaintiff was engaged in conducting a fraudulent scheme for obtaining money through the mails in violation of Sections 259 and 732 of Title 39 U.S.C.A.[2] Plaintiff thereupon insti-

---

1. The Post Office Department has only one Judicial Officer.

2. Those sections in pertinent part provide:

"§ 259. *Mail of persons conducting lotteries or fraudulent schemes returned; evidence of agency.* The Postmaster General may, upon evidence satisfactory to him that any person or company is engaged in conducting any lottery, gift enterprise, or scheme for the distribution of money, or of any real or personal property by lot, chance, or drawing of any kind, or that any person or company is conducting any other scheme or device for obtaining money or property of any kind through the mails by means of false or fraudulent pretenses, representations, or promises, instruct postmasters at any post office at which registered letters or any other letters or mail matter arrive directed to any such person or company, or to the agent or representative of any such person or company, whether such agent or representative is acting as an individual or as a firm, bank, corporation, or association of any kind, to return all such mail matter to the postmaster at the office at which it was originally mailed, with the word 'Fraudulent' plainly written or stamped upon the outside thereof; and all such mail matter so returned to such postmasters shall be by them returned to the writers thereof, under such regulations as the Postmaster General may prescribe. * * *"

"§ 732. *Payment of orders issued in favor of lotteries.* The Postmaster General may, upon evidence satisfactory to him that any person or company is engaged in conducting any lottery, gift enterprise, or scheme for the distribution of money, or of any real or person-

tuted the instant action to enjoin enforcement of the fraud order upon the grounds that:

(1) Defendant has failed to prove, by substantial evidence, fraud in fact on the part of plaintiff;

(2) Material error was committed in the admission into evidence of testimony of lay witnesses relative to the efficacy of the product and the interpretation of advertising and in the admission into evidence of a television advertising film;

(3) The agency's Rules of Practice, Procedure and Organization, under which the instant proceedings were had, are void in that they violate the provisions of the Administrative Procedure Act. 5 U.S.C.A. § 1001 et seq.

While I am of the opinion that plaintiff's motion must be granted because the hearing before the Judicial Officer was *not conducted in conformity with the* provisions of the Administrative Procedure Act, nevertheless in view of the novelty of this question, and the possibility that an appellate court may not agree with my interpretation of the law, I will discuss as well the other grounds raised by plaintiff.

### 1. Proof of Fraud by Substantial Evidence

Plaintiff, Borg-Johnson Electronics, Inc., sells at a price of $4.95 a portable radio about the size of a king-size package of cigarettes which it calls the "Lifetime Pocket Radio." Plaintiff advertises and solicits mail orders for this radio in newspapers and magazines and on television. The complaint by which proceedings before the Post Office Department were initiated alleges that plaintiff, through its advertising, represents to the public in substance and effect:

"a. That respondent's so-called 'Lifetime Pocket-Portable' device is 'A Portable Radio' that will enable any person to ' * * .* tune in your favorite radio programs any time, anywhere * * * by simply reaching into your pocket and and (sic) flipping a switch'; i. e., that said device is capable, per se, of receiving radio transmissions at any point where electric or battery-operated radio reception is possible, without the use of a ground or antenna;

"b. That respondent's said device contains a ' * * * built-in lifetime powerplant', ' * * * a new type of self-powered rectifier' that 'actually generates its own power by drawing electric waves *right out of the air* just like a magnet, and converts those waves into power-producing electricity!';

"c. That the principle of respondent's said device is ' * * * the same miracle invention now being used on all ("Army and Navy") radar and sonar equipment';

"d. That respondent's device is capable of giving 'Perfect Reception * * No Interference', and ' * * * gives you *perfect interference-free reception even in fringe areas * * * even on boats * * ** why even during rain and lightning storms when other radios "stutter" with static';

"e. That respondent's device has 'Super-Distance Range', and regardless where used, the same ' * * * pulls in programs as sharp and clear as if you were sitting right in the broadcasting studio * * * pulls in radio signals so strongly that it doesn't even have to warm up!' ' * * * even pulls in broadcasts from miles and miles away as clear and sharp as if they were coming from next door' and is 'so powerful it

al property by lot, chance, or drawing of any kind, or that any person or company is conducting any other scheme for obtaining money or property of any kind through the mails by means of false, or fraudulent pretenses, representations, or promises, forbid the payment by any postmaster to said person or company of any postal money orders drawn to his

or its order, or in his or its favor, or to the agent of any such person or company, whether such agent is acting as an individual or as a firm, bank, corporation, or association of any kind, and may provide by regulation for the return to the remitters of the sums named in such money orders. * * *"

picks up broadcasts from as far as 10 cities away';

"f. That respondent's device contains an 'amazing electronic discovery' that constitutes 'an entire radio powerplant * * * that generates more power than 1,000 batteries';

"g. That respondent's device is designed to be and is capable of being used in the same fashion and manner as battery and electrically-operated radios 'on trains * * * on planes * * * on boats'; i. e., that said device will give 'Perfect Reception' to any passenger on airplanes, trains and boats, without the use of grounds or antennae;

"h. That to any purchaser, respondent sends as an 'Extra Bonus Feature' a 'Direct-circuit personal earphone speaker that enables you to listen to your favorite program in complete privacy * * * why even in bed, without disturbing others'; i. e., that respondent's device may be used for audible radio reception with or without the 'earphone attachment';

"i. That respondent's so-called 'Lifetime Pocket Radio' is not '* * * a toy or some flimsy gadget * * * but a true precision engineered portable radio' that will 'outlast any radio ever sold in this country before!';

"j. That respondent's device is 'one of the most incredible inventions of our century', is offered to the public 'For the first time ever', is 'a completely new kind of radio, and is the first radio of its kind in history!'; i. e., that respondent's so-called 'Lifetime Pocket-Portable' is a 'new invention' which has not heretofore been available to the general public;

"k. That any purchaser of respondent's device will receive a device containing an on-off switch and a tuning-dial similar to that pictured in respondent's advertisement;

"l. That respondent extends a 10-day, 'Free Trial Offer' to any prospective purchaser of said device;

"m. That respondent's so-called 'Lifetime Pocket-Portable' device contains a 'built-in super distance antenna';

i. e., that neither a ground nor an antenna attachment is necessary for any person to receive perfect, interference-free reception through the use of respondent's said device."

Evidence was introduced at the hearing by the General Counsel of the Post Office Department to the effect that plaintiff's radio was in actuality a crystal set very similar in operation to the earliest form of radio used by the general public, and that it contained no source of power and no capacity to generate power such as in the usual radio set.

It appears that two wires run from the radio, one leading to an earphone device, the other to a small alligator clamp. Experiments conducted by defendant's expert witnesses revealed that the earphone was not an optional accessory but had to be used in order to receive any audible sounds over the device. Further, except within several hundred feet of a radio station it was necessary to clip the alligator clamp to some metal object in order for the radio to operate. Even then the reception was often extremely weak and only one or two stations could be received. The experts also testified that the radio could not be operated on a train or plane or in an automobile.

■ These facts stand out in sharp contrast to the overall impression created by plaintiff's advertising that it was selling an amazing new invention capable of being played wherever the owner might be and giving strong, clear reception. Clearly, the advertisements, when read in their entirety, were misleading and untrue. It is no defense that specific isolated portions of the advertisements might have been true.

"It is not each separate word or a clause here and there of an advertisement which determines its force, but the totality of its contents and the impression of the entire advertisement upon the general populace. * * * The ultimate impression upon the reader results not only from the total of what is stated but also from what is reasonably implied." Vibra Brush Corp. v. Schaf-

fer, D.C.S.D.N.Y.1957, 152 F.Supp. 461, 465, complaint dismissed as abated, 2 Cir., 1958, 256 F.2d 681.

"[E]ven if an advertisement is so worded as not to make an express misrepresentation, nevertheless, if it is artfully designed to mislead those responding to it, the mail fraud statutes are applicable." Farley v. Simmons, 1938, 69 App.D.C. 110, 99 F.2d 343, 346, certiorari denied 1938, 305 U.S. 651, 59 S.Ct. 244, 83 L.Ed. 422.

An intent to deceive was properly inferred from the artful wording of the advertisements. For example, Postal Inspector Gerard Mailloux testified that he visited plaintiff's offices and while there spoke to the officers of the corporation concerning the following statement in the advertising:

"Yes, a fine precision made radio that you can slip into your pocket and take to work * * * on train * * * on planes * * on boats * * * in stores * * * to ball parks * * * on fishing and camping trips * * * yes, a lifetime pocket portable that you will carry with you and will enjoy day in and day out all your waking hours."

Mr. Mailloux testified that one of the officers of the corporation stated to him that if he read the statement closely he would see that it only said the device could be "carried" as opposed to being "played" in these places. From this and other testimony it was proper for the Judicial Officer to infer that plaintiff knew it was creating a false impression and deliberately did so.

■ Plaintiff did not deny that it made the above quoted representations, but contended that they were essentially true and, at the most, constituted merely permissible puffing. It is plaintiff's position that the radio is not an entirely worthless item,[3] and that the advertise-

ments did no more than exaggerate its advantages. Plaintiff argues, further, that its money back guarantee negates a finding of fraudulent intent. However, it is noted that the Judicial Officer found, not that plaintiff's radio was entirely worthless, but that it fell far short of what it was claimed to be. When it appears that an advertiser deliberately induces its patrons to purchase its product in the belief that its value far exceeds its true worth it is sufficient to support a finding that a fraudulent scheme was being conducted. Leach v. Carlile, 1922, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511. This is so, even where there is a promise to refund the purchase price should the article sold prove unsatisfactory. Farley v. Heininger, 70 App.D.C. 200, 105 F. 2d 79, 84, certiorari denied 1939, 308 U. S. 587, 60 S.Ct. 110, 84 L.Ed. 491.

■■ Further, the role of the court in reviewing the findings upon which fraud orders are based must be placed in its proper perspective. The courts are "not to resolve contradictory inferences, but only to determine if there was evidence to support the Postmaster General's findings of fraud." Donaldson v. Read Magazine, 1948, 333 U.S. 178, 186, 68 S.Ct. 591, 596, 92 L.Ed. 628. The courts are not free to reverse those findings unless they are so palpably wrong as to amount to an abuse of discretion. Leach v. Carlile, supra; New v. Tribond Sales Corp., 1927, 57 App.D.C. 197, 19 F. 2d 671, certiorari denied 1927, 275 U.S. 550, 48 S.Ct. 114, 72 L.Ed. 420. I cannot find, on the record in the instant case, that the Judicial Officer's findings were "palpably wrong". Indeed, I find that they were amply supported by the record.

### 2. Evidentiary Rulings

■ At the hearing, two lay witnesses, Ralph Egan and Steven Dukson, testified over objection, that they had each purchased one of plaintiff's radios and found that it failed to live up to the representations made in plaintiff's adver-

---

3. In support of this contention plaintiff submitted a report rendered to it by the York Research Foundation, expressing the opinion that the device performed somewhat better than the average crystal radio.

tisements. Plaintiff urges that it was error to receive testimony of lay witnesses on the technical questions involved in this case. In reply it must be stated that it is certainly relevant on the issue of fraud that purchasers were deceived into believing that they would receive more than they actually received. Cf. Linden v. United States, 4 Cir., 1958, 254 F.2d 560, 566, 567. The evidence was properly received.

█ Plaintiff urges, further, that the reception in evidence of a television advertising film, not mentioned in the complaint, resulted in surprise and constituted material error. The film consisted of an advertisement of the Borg-Johnson radio. Plaintiff does not deny that the television advertisement was substantially similar in content to the newspaper advertisement appended to the complaint. I find that its reception did not constitute error.

3. The Administrative Procedure Act

Plaintiff asserts three grounds for finding that the Rules of Practice, Procedure and Organization of the Post Office Department under which the instant proceedings were conducted violate the provisions of the Administrative Procedure Act:

█ (a) In placing the Hearing Examiners under the Judicial Officer, the Rules violate Section 11 of the Act, 5 U.S.C.A. § 1010, which requires that the Hearing Examiners have independent status and that they can in no way be controlled by the Agency or Department.[4] I find no merit in this argument. Even if this rule were improper, plaintiff was in no way prejudiced thereby, since the instant proceedings were not conducted by a Hearing Examiner but by the Judicial Officer. Further, the roles of prosecutor and judge were not intermingled in the Judicial Officer, as was the case in Columbia Research Corp. v. Schaffer, 2 Cir., 1958, 256 F.2d 677 cited by plaintiff.

█ (b) The Rules violate Section 4 (c) of the Act,[5] 5 U.S.C.A. § 1003(c) in that they were not published in the Federal Register at least thirty days prior to the date on which they were to become effective. Assuming that Section 4(c) applies to the instant case, plaintiff has no cause to complain since the Rules were first published on April 26, 1958 and the instant proceedings were not instituted until June 9, 1958, forty-four days thereafter.

(c) The Rules of Practice violate Section 7(a) of the Act, 5 U.S.C.A. § 1006 (a) in that they authorize the Judicial Officer,[6] who is not one of the three classes of persons authorized under Section 7 (a), to conduct hearings. Indeed, the

4. "§ 1010. *Appointment of examiners; assignment, removal and compensation; jurisdiction of Civil Service Commission*

"Subject to the civil-service and other laws to the extent not inconsistent with this chapter, there shall be appointed by and for each agency as many qualified and competent examiners as may be necessary for proceedings pursuant to sections 1006 and 1007 of this title, who shall be assigned to cases in rotation so far as practicable and shall perform no duties inconsistent with their duties and responsibilities as examiners. Examiners shall be removable by the agency in which they are employed only for good cause established and determined by the Civil Service Commission (hereinafter called the Commission) after opportunity for hearing and upon the record thereof. Examiners shall receive compensation prescribed by the Com-

mission independently of agency recommendations or ratings and in accordance with sections 661–663, 664–669, 670–672, 673, and 674 of this title, except that the provisions of paragraphs (2) and (3) of subsection (b) of section 667 of this title, and the provisions of section 669 of this title, shall not be applicable. * * *"

5. *"Time of publication or service of rules*
"(c) The required publication or service of any substantive rule (other than one granting or recognizing exemption, or relieving restriction or interpretative rules and statements of policy) shall be made not less than thirty days prior to the effective date thereof except as otherwise provided by the agency upon good cause found and published with the rule."

6. Section 201.17 of the Rules provides:
"*Judicial Officer.* The Judicial Officer

Judicial Officer conducted the hearing in the instant case.

Section 7(a) provides that:

"There shall preside at the taking of evidence (1) the agency, (2) one or more members of the body which comprises the agency, or (3) one or more examiners appointed as provided in this chapter; but nothing in this chapter shall be deemed to supersede the conduct of specified classes of proceedings in whole or part by or before boards or other officers specially provided for by or designated pursuant to statute." [7]

Defendant does not contend that the Judicial Officer falls within one of the three categories enumerated in Section 7(a), but argues that he is an officer specially provided for by or designated pursuant to statute (Section 1(b) of Reorganization Plan No. 3 of 1949), and thus falls within the savings provision in the section. Plaintiff concedes that the Postmaster General himself is authorized to preside at administrative hearings of the type conducted in the instant case. It is defendant's position, however, that this authority may be delegated by him to any of his subordinates pursuant to Section 1(b) of Reorganization Plan No. 3 of 1949, 5 U.S.C.A. § 133z–15. That section provides:

"The Postmaster General is here-·by authorized to delegate to any of-

ficer, employee, or agency of the Post Office Department designated by him such of his functions as he deems appropriate."

 Defendant contends that this power to delegate functions is in no way limited by the Administrative Procedure Act and urges that confirmation for this is to be found in the savings clause of Section 7(a). However, Section 12 of the Act, 5 U.S.C.A. § 1011 provides in part that

"No subsequent legislation shall be held to supersede or modify the provisions of this chapter except to the extent that such legislation shall do so expressly."

The provisions for the appointment of impartial, independent Hearing Examiners are the very heart and soul of the Administrative Procedure Act and variations therefrom should not be countenanced except where a statute expressly provides for a Hearing Examiner appointed in another manner. See, Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 51–53, 70 S.Ct. 445, 94 L.Ed. 616; Schwartz, The Administrative Procedure Act in Operation, 29 N.Y.U.L.Rev. 1173, 1224 (1954).

"Exemptions from the terms of the Administrative Procedure Act are not lightly to be presumed in view of the statement in § 12 of the Act that modifications must be express." Marcello v. Bonds, 1955, 349

is the officer duly authorized to render a final departmental decision for the Postmaster General. The Judicial Officer, acting for the Postmaster General, may also preside at the reception of evidence and make the final departmental decision. Either party at the time of the filing of the complaint or answer or not less than 10 days prior to the date scheduled for the hearing may petition the Judicial Officer requesting that he preside at the reception of evidence and make the final departmental decision based upon his hearing of the evidence. · The reasons for such a request shall be stated in the petition. This matter shall be within the discretion of

the Judicial Officer, and, if he grants the request of the petitioner, the parties shall be notified of the fact. In all other cases, a hearing examiner shall preside at the reception of evidence. In any case before final agency decision has been rendered the Judicial Officer may order the hearing reopened for the purpose of taking additional evidence by the examiner who presided or the Judicial Officer."

7. The appointment of examiners is governed by Section 11 of the Act, 5 U.S. C.A. § 1010, which provides that they shall be under the jurisdiction of the Civil Service Commission.

U.S. 302, 310, 75 S.Ct. 757, 762, 99 L.Ed. 1107.

I cannot find in the very general language of the 1949 Reorganization Plan such express statutory authority as would permit the appointment of a hearing officer (here the Judicial Officer) in a manner not authorized by the Administrative Procedure Act.[8]

The Administrative Procedure Act was enacted in recognition of the fact that agency heads, unable personally to conduct hearings, would be forced to delegate that duty. One of the primary purposes of the Act was to establish qualified, impartial Hearing Examiners who would not be mere "rubber stamps" for the agency's prosecuting arm. Ramspeck v. Federal Trial Examiners Conference, 1953, 345 U.S. 128, 73 S.Ct. 570, 97 L.Ed. 872. Thus, it was provided in the Act that Hearing Examiners would be under the Civil Service Commission,[9] and further, that "so far as practicable" cases would be assigned to them on the basis of mechanical rotation.

Under the Rules of Practice of the Post Office Department, as presently formulated, whenever either party so requests, the Judicial Officer may at his discretion substitute himself for the Hearing Examiner. Thus this one officer, under the direct supervision of the agency, rather than the Civil Service Commission, would be in a position to hear the cases which he and the agency decided he should hear.[10] This is a far cry from the mechanical rotation prescribed by Section 11 of the Act, 5 U.S.C.A. § 1010, and greatly exceeds the variation therefrom found permissible in Ramspeck v. Federal Trial Examiners Conference, supra, 345 U.S. at pages 139, 140, 73 S.Ct. at pages 576, 577. Indeed, the corps of independent Hearing Examiners provided for in the Act would be permitted to hear only such cases as the agency wanted them to hear. Other cases, possibly those more important to the agency, would be referred to a hearing officer whose impartiality may not be as assured as that of a Hearing Examiner serving pursuant to the terms of the Act. Thus, it is conceivable that the Rules of the Post Office Department dealing with the instant subject matter, if permitted to stand, could provide the vehicle by which that Department might avoid entirely the Hearing Examiner provisions of the Administrative Procedure Act. The Administrative Procedure Act is to be viewed without antagonism by the courts and such a virtual nullification of one of its most important provisions is not to be countenanced in the absence of express congressional mandate. Cf. Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868.

Nor do I find that the Administrative Procedure Act and the 1949 Reorganization Plan may be harmonized only by

---

8. See the Message of the President, dated June 20, 1949, which accompanied the Reorganization Plan when it was submitted to Congress. This message emphasizes the very general nature of the plan, and impels the inference that delegation of authority to preside at formal proceedings was not specifically contemplated.

9. "Congress intended to make hearing examiners 'a special class of semi-independent subordinate hearing officers' by vesting control of their compensation, promotion and tenure in the Civil Service Commission to a much greater extent than in the case of other federal employees." Ramspeck v. Federal Trial Examiners Conference, supra, 345 U.S. at page 132, 73 S.Ct. at page 573.

10. In the instant case, the General Counsel of the Post Office Department petitioned the Judicial Officer, requesting that he preside at the hearing. This petition was granted by an order of the Judicial Officer dated June 10, 1958. Thus the selection of the officer to preside at the hearing was made upon petition of one agency employee to another agency employee, without the consent of the other party to the litigation. Indeed, Borg-Johnson later moved that the Judicial Officer vacate the order of June 10, but this motion was denied.

permitting the present Rules to stand. The Reorganization Plan authorized the Postmaster General to delegate any of his functions. The Administrative Procedure Act does not forbid the delegation of power to preside at formal proceedings, but specifies that, if this function is to be delegated, it must be to one appointed in a designated manner.[11]

For all of the foregoing reasons, I find that the fraud order issued by the Judicial Officer is invalid for failure to comply with the provisions of the Administrative Procedure Act, and is therefore void. I am constrained to reach this result despite my personal view that plaintiff's acts clearly warrant the imposition of a fraud order. I am not free to disregard congressional policy concerning the manner in which administrative hearings are to be conducted merely because the administrative record discloses a meritorious case. It is my duty to look beyond the merits of the individual case toward the effectuation of a broad policy of insuring fair and impartial hearings to all litigants. Any other approach would result in chaos and uncertainty. I find, therefore, that plaintiff is entitled, as a matter of law, to judgment enjoining the enforcement of the fraud order, without prejudice to a renewal of proceedings by defendant under Rules of Practice and Procedure in conformity with the provisions of the Administrative Procedure Act.

Plaintiff's motion for summary judgment is accordingly granted.

Defendant's motion for summary judgment is denied.

Settle order.

---

11. As stated in the Report of the House Judiciary Committee on a bill which became the Administrative Procedure Act, the saving clause of Section 7(a) "is not a loophole for the avoidance of the examiner system; it is intended to preserve only special types of statutory hearing officers who contribute some special qualifications * * * and at the same time assure the parties fair and impartial procedure." Administrative Procedure Act: Legislative History 268.