Irwin GREENE d/b/a Tigron Distribu-
tors, Plaintiff,

v.

William P. KERN, Postmaster, Jersey
City, New Jersey, Defendant.

Civ. A. No. 950–59.

United States District Court
D. New Jersey.

Nov. 13, 1959.

Herbert S. Alterman, Passaic, N. J.,
Bass & Friend, by Solomon Friend, New
York City, of counsel, for plaintiff.

Chester A. Weidenburner, U. S. Atty.,
by Charles H. Hoens, Jr., Asst. U. S.
Atty., Newark, N. J., for defendant.

WORTENDYKE, District Judge.

This action was instituted for a pre-
liminary and permanent injunction re-
straining the enforcement of an im-
pounding order issued by the Judicial
Officer of the Post Office Department on
June 19, 1959, upon a departmental com-
plaint charging violations by the plain-
tiff of sections 259 and 732 of Title 39
of the United States Code Annotated.
The order directed the defendant Post-
master to hold and impound plaintiff's
mail pending hearing and final deter-
mination of the administrative proceed-
ings. Plaintiff claimed that the order
was made without lawful authority and
in violation of the Administrative Pro-
cedure Act, 5 U.S.C.A. § 1001 et seq.
This Court's order of July 1, 1959, in-
validating the impounding order was af-
firmed on appeal. See 174 F.Supp. 480,
affirmed 3 Cir., 269 F.2d 344.

The Departmental proceedings resulted
in a fraud order made by the Judicial
Officer on October 28, 1959, which af-
firmed and adopted an initial decision
made on August 24, 1959 by a Hearing
Examiner who presided at the Depart-
mental hearing accorded to the plaintiff.

This case is now before me on return
of an order of this Court directing the

defendant to show cause why a preliminary injunction should not issue restraining the enforcement of the fraud order upon the grounds (1) that the Judicial Officer was without authority to make the order under the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., and (2) that the fraud order is not supported in the administrative record by substantial evidence of fraud, as required by 39 U.S.C. §§ 259 and 732.

### Authority of Judicial Officer

Plaintiff argues that because administrative proceedings upon fraud complaints in the Post Office Department are governed by the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., Cates v. Haderlein, 1951, 342 U.S. 804, 72 S.Ct. 47, 96 L.Ed. 609, the Judicial Officer was without authority to make the final decision in the proceedings. Plaintiff correctly cites section 8(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1007(a), as controlling the administrative proceedings in the present case. I find that the requirements of this section have been fully met. Because the case was not one in which the agency presided at the reception of the evidence, an Examiner having presided thereat pursuant to section 7 of the Act, 5 U.S.C.A. § 1006, the Examiner initially decided the case and his decision became the decision of the agency because there was neither an appeal to the agency nor a review upon its motion. Plaintiff argues that because the Administrative Procedure Act requires that final decision be made only by the agency, *except where an officer other than the agency presides at the hearing,* the Judicial Officer could not exercise the power of final decision reposed in the agency. In support of this contention plaintiff relies upon Columbia Research Corp. v. Schaffer, 2 Cir., 1958, 256 F.2d 677, which held that the agency, in a case of this kind, is the Postmaster General and that the General Counsel of the Post Office Department was without authority to act as the agency's representative for purposes of final decision even though the General Counsel had

been appointed by the President and approved by the Senate. In Columbia Research the Court of Appeals reversed the District Court (152 F.Supp. 515), which had sustained a Post Office Department fraud order, because the departmental rules provided that the departmental decision for the Postmaster General could be, and in the case was, made by the General Counsel, whereas the initiation of the proceedings was authorized by the Assistant General Counsel. In holding that these regulations were contrary to the purpose of the Act, the Appellate Court commented (256 F.2d at page 679) that "When the subordinate is prosecutor and his superior is judge, it appears to us reasonable to suppose that the prosecutor will be disposed to select such cases as he believes will meet with his superior's approval, and that his discretion may be exercised otherwise than if each was responsible to the Postmaster only by a separate chain of authority. * * * (I)t makes much difference whether it be reserved to the highest level of authority: i. e., to the 'agency' itself and it is fairly obvious that Congress had just this in mind when at the end of § 1004(c) it provided that the subsection should not apply to the 'agency' or to any of its 'members.' There alone was the fusion to be permissible."

Plaintiff's attack upon the authority of the Judicial Officer to legally make the final decision in the administrative case as the delegated representative of the Postmaster General claims support in Judge Kaufman's opinion in Borg-Johnson Electronics, Inc. v. Christenberry, D.C.S.D.N.Y.1959, 169 F.Supp. 746, 753. That was an action to enjoin enforcement of a fraud order issued by the Postmaster General. Both parties agreed that there were no triable issues of fact, and that either one or the other of them was entitled to summary judgment as a matter of law. The Rules of Practice, Procedure and Organization of the Post Office Department (Section 201.17), provided that the Judicial Officer was "the officer duly authorized to render a final departmental decision for the

Postmaster General," and that he, "acting for the Postmaster General, may also preside at the reception of evidence and make the final departmental decision." Plaintiff was sustained in its assertion that the rule provision authorizing the Judicial Officer to conduct hearings was in violation of section 7(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1006(a), which limited authority to preside at the taking of evidence to (1) "the agency, (2) one or more members of the body which comprises the agency, or (3) one or more examiners appointed as provided in" the Act. Because the Judicial Officer was concededly not within any of these three categories, the Court held that he was without authority to preside, despite the power of the Postmaster General, pursuant to Section 1 (b) of Reorganization Plan No. 3 of 1949, 5 U.S.C.A. following section 133z–15, "to delegate to any officer, employee, or agency of the Post Office Department designated by him such of his functions as he deems appropriate." [169 F.Supp. 753.] Since "the appointment of examiners is governed by Section 11 of the [Administrative Procedure] Act, 5 U.S.C. § 1010, which provides that they shall be under the jurisdiction of the Civil Service Commission," the Postmaster General's delegate could not legally conduct the hearing in place of an examiner appointed pursuant to the Act. Because the Rules of Practice of the Department permitted the Judicial Officer to substitute himself for the Hearing Examiner, said the Court in Borg-Johnson, supra, "this one officer, under the direct supervision of the agency, rather than the Civil Service Commission would be in a position to hear the cases which he and the agency decided he should hear * * * the corps of independent Hearing Examiners provided for in the Act would be permitted to hear only such cases as the agency wanted them to hear * * *" and the Rules "if permitted to stand, could provide the vehicle by which that Department might avoid entirely the Hearing Examiner provisions of the Administrative Procedure Act." The Court found no conflict between the Reorganization Plan's authorization to the Postmaster General "to delegate any of his functions" and the requirement of the Administrative Procedure Act that, if he does delegate the function of presiding at formal proceedings, "it must be to one appointed in a designated manner", i. e., to examiners appointed as provided in Section 11 of the Act, 5 U. S.C.A. § 1010.

The decision of Judge Palmieri in United States Bio-Genics Corp. v. Christenberry, D.C.S.D.N.Y.1959, 173 F. Supp. 645, 646, is not in conflict with that of Judge Kaufman in Borg-Johnson, supra. In the former case, the fraud order was entered for violation of an Affidavit of Discontinuance filed upon waiver of hearing, in which affiant agreed that if he resumed the enterprise charged as fraudulent a fraud order might be entered against him by "the Postmaster General or the Deputy Postmaster General or the General Counsel for the Post Office Department." At the time the affidavit was filed, the officers named above were all who then had power to issue final agency orders, but after the decisions of the Second Circuit (1958) in Columbia Research Corp. v. Schaffer, 256 F.2d 677, and Vibra Brush Corp. v. Schaffer, 256 F.2d 681, the Rules of the Department were amended by transferring the power to issue final agency orders which was formerly vested in the General Counsel, to the Judicial Officer. Plaintiff in Bio-Genics, relying upon Borg-Johnson, contended that the delegation to the Judicial Officer of power to issue final orders was invalid. This contention was overruled, the Court stated, 173 F.Supp. at page 650 of its opinion in Bio-Genics:

"Valid delegation of the power to make a final agency decision is not limited, however, to those who may be delegated to conduct hearings. Nor are there mingled in the Judicial Officer's powers the prosecuting and judicial functions which caused the Court of Appeals, in the Columbia Research case, supra, to indicate that the General Counsel

might not validly issue final agency orders. \* \* \* The Judicial Officer may not be validly empowered to conduct hearings; but his delegated power to issue final orders is valid; \* \* \* " (citing Sec. 1(b) Reorganization Plan No. 3, 63 Stat. 1066 (1949), 5 U.S.C.A. § 369 note).

Section 369 of Title 5 prescribes among the duties of the Postmaster General that of executing all laws relative to the Postal Service. The making of a fraud order is a step in the exercise of such laws. That duty may be delegated pursuant to Section 1(b) of the Reorganization Plan No. 3 of 1949 without violating the Administrative Procedure Act.

Plaintiff calls to our attention Ramspeck v. Federal Trial Examiners Conference, 1953, 345 U.S. 128, 73 S.Ct. 570, 97 L.Ed. 872, as an expression of judicial recognition that "agency heads cannot be expected to personally hear and decide every agency case" and that therefore the Administrative Procedure Act has provided for a corps of competent and qualified hearing examiners to preside at administrative hearings and to render initial or recommended decisions. Such was the situation in the present case administratively. An Examiner did preside at the hearing and did make the original decision. None of the authorities upon which the plaintiff relies is persuasive to the conclusion that the action of the Postmaster General under Reorganization Plan No. 3, in delegating to the Judicial Officer the authority to render final decision upon an administrative complaint, was in conflict with the provisions of the Administrative Procedure Act insofar as they relate to the making of such final decision, as distinguished from the conduct of the hearing and the submission of an initial decision. I am persuaded by the logic of the reasoning in the Bio-Genics case, supra, that the final administrative decision in the Department is the product of adequately supported jurisdiction. Moreover, there has been no showing that the applicable provisions of the Rules of Practice, Procedure and Organization for the Post Office Department result in an illegal commingling of prosecutive and adjudicatory functions violative of the provisions of the Administrative Procedure Act. I find nothing in such Rules from which I can conclude that the Judicial Officer who made the final administrative decision was appointed by the person responsible for the prosecution of the administrative hearing which ultimately resulted in that decision. I am not persuaded that, because the publication of the Rules was over the signature of the Acting General Counsel, he played any part in the delegation by the Postmaster General of authority to the Judicial Officer to act as aforesaid. That the provision of a rule or rules relating to the authority to preside at the hearing may have been held illegal is insufficient to taint the validity of the rule provision authorizing the Judicial Officer to act for the Postmaster General in making the final decision in departmental proceedings. It was reported in the issue of the Federal Register of Saturday, April 26, 1958, that Headquarters Circular No. 87 of the Post Office Department, dated April 24, 1958, established in the office of the Postmaster General a Judicial Officer for the Post Office Department who was authorized, pursuant to section 1(b) of Reorganization Plan No. 3 of 1949, to execute the final decision and order in proceedings authorized by §§ 259 and 732 of Title 39 of the United States Code Annotated. We learn further, from the Federal Register of Saturday, June 7, 1958, that the decisions and orders of the Judicial Officer made under the delegated authority are the final departmental action from which there is no further administrative remedy. The same issue of the publication referred to prescribes (in § 822.2) the duties of the General Counsel, Deputy General Counsel, Special Associate General Counsel, Special Assistant General Counsel, Administrative Aide, and Associate General Counsel (Mailability-Claims) among none of which appears either the duty or authority to play any part in the appointment or other designation of, to control or to act in place of, the Judicial

Officer. The amendments of Part 201 in Procedures of the Post Office Department published in the Federal Register on Friday, May 30, 1958, is irrelevant to our question. The regulations considered in Pinkus v. Reilly, D.C.N.J.1957, 157 F. Supp. 548, were not those which governed the administrative proceedings in the present case, in which latter the administrative complaint was not filed until May 27, 1959. I therefore conclude that the fraud order is valid if the administrative record contains substantial evidence supporting the charges which resulted in that order.

### The Evidence Before the Examiner

■ The Examiner found that the plaintiff sells a product called Tigron and in its sales efforts sends through the United States mails, to persons who have not previously requested it, circular matter soliciting the purchase of its product and making the following representations with respect thereto:

(a) that the use of Tigron as directed will reactivate lost sex energy no matter what age, i. e., that the product will overcome sexual impotency in users regardless of age;

(b) that, by using Tigron, old and played-out persons will be able to enjoy all of the benefits of youth once again, i. e., that the product will restore full youthful energy and stamina to users, regardless of their former condition or the cause of that condition;

(c) that the product will make the memories of lost youthful energy and sex energy a reality again for any user;

(d) that the results of the use of the product are positive, i. e., certain;

(e) that the product contains the missing vital needs of any man or woman lacking in energy and sex energy, i. e., that the ingredients contained in the product are regularly missing from or inadequate in the diet of such persons;

(f) that Tigron is a most important scientific discovery for the treatment of the conditions for which it is sold, i. e., that the product's ingredients are new and their therapeutic effects have heretofore been unknown to medical science. The testimony before the Examiner, coupled with the admissions of the plaintiff, amply support the Examiner's finding that the foregoing representations respecting the plaintiff's product were both false and fraudulent and made by the plaintiff with intent to deceive those whose purchase of plaintiff's product was solicited by the mailed matter. I have read the transcript of the testimony presented to the Examiner in the administrative proceeding. I do not propose to review that testimony in this opinion, but I conclude that the record discloses substantial evidence supporting the respective decisions of the Hearing Examiner and of the Judicial Officer that plaintiff is engaged in conducting a scheme for obtaining money through the mails by means of false representations within the contemplation of 39 U.S.C.A. § 259. I could reverse the decision of the Judicial Officer only if I found it unsupported in the record. I have found it amply supported there. Having concluded that the administrative record discloses substantial evidence supporting the determination of the Judicial Officer, I could not substitute my judgment for his. Farley v. Heininger, 1939, 70 App. D.C. 200, 105 F.2d 79, certiorari denied 308 U.S. 587, 60 S.Ct. 110, 84 L.Ed. 491; Leach v. Carlile, 1921, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511; Reilly v. Pinkus, 1949, 338 U.S. 269, 70 S.Ct. 110, 94 L. Ed. 63. In Bio-Genics, supra, claims that the plaintiff's product would restore sexual virility to impotent men and otherwise accomplish sexual rejuvenation, were held sufficient to support a Post Office Department fraud order. I conclude therefore that the fraud order in the case at bar finds ample support in the evidence presented in the administrative proceedings. The order to show cause of November 2, 1959 will be discharged and summary judgment may be entered in favor of the defendant, dismissing the complaint.

An appropriate order may be presented in conformity with the views herein expressed.