**U. S. HEALTH CLUB, INC.**

v.

**William MAJOR, Postmaster, Bergenfield, New Jersey, Appellant.**

No. 13330.

United States Court of Appeals
Third Circuit.

Argued March 20, 1961.

Decided June 15, 1961.

---

Howard E. Shapiro, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Chester A. Weidenburner, U. S. Atty., Newark, N. J., Morton Hollander, Howard E. Shapiro, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Solomon H. Friend, New York City, (Bass & Friend, New York City, on the brief), for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

This appeal requires us to determine whether a Post Office Department judicial officer can make a final agency decision under § 8, 5 U.S.C. § 1007, of the Administrative Procedure Act ("APA") and issue a fraud order although not qualified to act as a hearing officer under § 7, 5 U.S.C. § 1006 of the APA, and if so, whether the order issued here is supported by substantial evidence.

The Post Office Department instituted proceedings charging U. S. Health Club, Inc., appellee, with conducting a fraudulent enterprise through use of the mails in connection with the sale of two products called Super-Coronaid and Choless. These products contained certain unsaturated fatty acids, together with vitamins and other substances. In its advertising, appellee claimed that when used as directed these products would, by eliminating or substantially reducing formation of cholesterol deposits on the walls of blood vessels, prevent heart diseases and hardening of the arteries.

Based in large part on the testimony of Doctor Kenneth D. Campbell, a hearing examiner recommended, and a judicial officer ordered, issuance of a fraud order under the provisions of 39 U.S.C. §§ 259 and 732. Appellee commenced an action in the district court, contending, inter alia, that the order was not supported by substantial evidence, and requested injunctive relief. The United States, on behalf of the local postmaster, appellant, placed the administrative record in evidence and moved for summary judgment. The district court, construing Dr. Campbell's testimony as an opinion on the efficacy of the two products, held, citing American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90, that the order was not supported by substantial evidence and enjoined enforcement. D.C. D.N.J.1960, 182 F.Supp. 759.

Two issues are raised by this appeal. First, to the appellee's contention that the fraud order was, in effect, a nullity because the judicial officer who made the final agency decision under § 8(a), 5 U.S.C. § 1007(a) of the APA, lacked the power to do so because he was not authorized to conduct hearings under § 7 (a), 5 U.S.C. § 1006(a) of the APA, the appellant asserts that the Postmaster General can delegate his power to make a final decision under § 8(a) to a judicial officer since such a function is different from conducting hearings and receiving evidence. This being so, the appellant further contends that enforcement of the fraud order should not be enjoined because there is more than substantial evidence in the record to support it. We agree with appellant on both points.

Section 7(a) governs who may preside at the taking of evidence by specifically limiting that function to (1) the agency; (2) one or more members thereof; or (3) a hearing examiner as provided for in § 11, 5 U.S.C. § 1010 of the APA. Our review of the legislative history of the APA [1] makes it clear that one of its principal purposes was to limit the conduct of hearings and reception of evidence to specially qualified persons who were to be an essential part of the administrative adjudicatory process. They are given the power to make initial decisions which become the final agency decision unless reviewed by appeal to the agency or upon motion by the agency itself. § 8(a), 5 U.S.C. § 1007(a). Thus, it is seen that the hearing officer is the touchstone of the adjudicatory

[1]. 92 Cong.Rec. 2157, 5652, A–2984, 79th Cong., 2d Sess., 1946.

process, and the initial decision made by him "which may dispose of the case or be the statement of it from which appeal may be taken to the heads [should] carry a hallmark of fairness and capacity."[2] The APA attempts to make hearing officers semi-autonomous and not, as had been charged in the past, "mere tools of the agency concerned and subservient to the agency heads in making their proposed findings of fact and recommendations." Ramspeck v. Federal Trial Examiners Conference, 1953, 345 U.S. 128, 131, 73 S.Ct. 570, 572, 97 L.Ed. 872. No such special status was contemplated for those who make the final agency decision. Section 8(a) permits a reviewing official to make a final decision based on the record made before and screened by an independent hearing officer. As is readily apparent, a final decision under § 8(a) is not, in any manner, similar to conducting a hearing. In addition, the plain words of that section do not require that the final decision be made only by those enumerated with particularity in § 7(a). The right of the Postmaster General to delegate his power to make a final decision is authorized by § 1(b) of Reorganization Plan No. 3 of 1949, 63 Stat. 1066, 14 Fed.Reg. 5225, 5 U.S.C.A. § 133z–15 note. Were it otherwise, the Postmaster General, the head of what has been described as the world's largest business, would be called on daily to make a great number of final decisions under § 8(a).

Greene v. Kern, D.C.D.N.J.1959, 178 F.Supp. 201, and United States Bio-Genics Corp. v. Christenberry, D.C.S.D. N.Y.1959, 173 F.Supp. 645, affirmed 2 Cir., 1960, 278 F.2d 561, are on point and support our conclusion, while Borg-Johnson Electronics, Inc. v. Christenberry, D.C.S.D.N.Y.1959, 169 F.Supp. 746, cited by appellee, is inapposite for there the judicial officer sat as a hearing officer during the entire proceedings conducted under § 7.

Both parties agree, as indeed they must, that before a fraud order can be issued it must be found, first, that the claims made through use of the mails were false, and that such claims were made with intent to deceive. Further, such an order must be enforced so long as it is supported by substantial evidence. The parties part ways, however, as to the competency of Dr. Campbell's testimony, which is the sole basis for the order, i. e., whether he testified as to what the consensus of medical opinion was concerning appellee's claims or simply stated what his opinion was in this regard.

This is an area in which difficulty of proof frequently confronts law enforcement officials. Whether the claims made are false is usually a matter more susceptible of proof than establishing an intent to deceive. In a landmark decision, the Supreme Court in Reilly v. Pinkus, 1949, 338 U.S. 269, 276, 70 S.Ct. 110, 114, 94 L.Ed. 63, said: "An intent to deceive might be inferred from the universality of scientific belief that advertising representations are wholly unsupportable * * *."

Dr. Campbell was a well qualified witness. Having previously served as a Lieutenant Colonel in the Air Force Medical Department, in 1946 he was employed by the United States Food and Drug Administration, and at the time of his testimony he was Associate Medical Director of Drugs and Devices, and was engaged in part time practice while serving on the staff of two hospitals. For approximately eight months before he testified, Dr. Campbell studied medical literature, including various reference materials and brochures concerning the use and effect of unsaturated fatty acid preparations. He also examined descriptions on the labels of bottles containing Super-Coronaid and Choless and familiarized himself with the effect in treatment of heart and arterial diseases of the various ingredients in those products.

Dr. Campbell testified that it was the consensus of informed medical opinion

---

2. Report of the Attorney General's Committee on Administrative Procedure, S. Doc. No. 8, 77th Cong., 1st Sess., 1941, pp. 43–44.

that appellee's allegations concerning Super-Coronaid and Choless were false. He also indicated that the correlation between cholesterol levels in the blood stream and arterial diseases has not as yet been demonstrated or accepted by a consensus of expert medical opinion although some few experts do believe that it exists. Some medical experts believe that by altering diet so that small quantities of animal fat are ingested, and unsaturated fatty acids added to it, the blood cholesterol level may be reduced, thereby warding off heart and arterial diseases. But this was not the crucial part of his testimony. He went on to add that it is the universality of expert medical opinion that quantities of unsaturated fatty acids as small as those contained in Super-Coronaid and Choless would have no effect in preventing heart and arterial diseases. A daily dose of those products would give the taker only two or three grams of unsaturated fatty acids, which, all medical experts agree, would be totally ineffective. In addition, he testified that according to the consensus of medical opinion, the use of unsaturated fatty acids, without an accompanying revision in diet involving alteration of the over-all caloric fat intake, would be of no beneficial effect. This testimony clearly established, as a fact, the state of medical opinion respecting appellee's claims, and it was not an expression of Dr. Campbell's opinion on these matters, as the district court erroneously concluded. Owen Laboratories, Inc. v. Schroeder, 7 Cir., 1960, 284 F.2d 445.

A few words need be said about American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90, on which the district court relied. There, the allegedly false claims were based upon a belief that certain mental techniques could control physical illness. In its opinion, the Court made it clear that there were two conflicting schools of thought on the effect of the mind over disease, and that scientific knowledge had not as yet reached the point where any universality of opinion existed. Here, however, Dr. Campbell's uncontradicted testimony established a universality of medical opinion on the crucial issues.

The judgment of the district court will be reversed and the cause remanded with directions that judgment be entered in favor of the appellant.