STEIN'S, Stein's Mfg. Co., and Lou Stein,
P. C., Plaintiffs,

v.

Arlton PILLING, Postmaster Woodbury,
New Jersey, Defendant.

Civ. No. 210-66.

United States District Court
D. New Jersey.

Aug. 1, 1966.

Barry M. Weinberg, Camden, N. J., and Mitchell S. Lipschutz, Philadelphia, Pa., of counsel for plaintiffs.

David M. Satz, Jr., U. S. Atty., Newark, N. J., by Robert W. Page, Asst. U. S. Atty., for defendant.

## OPINION

COHEN, District Judge:

Plaintiffs seek a preliminary and permanent injunction against the enforcement of a United States Post Office Department Order, intercepting mail of the plaintiffs for fraudulent violation of Title 39 U.S.C. § 4005.

Jurisdiction is derived from 28 U.S.C. § 1339, and the scope of review of the final departmental decision and order, 5 U.S.C. §§ 1007, 1009, must be confined to a determination of whether there was substantial evidence in fact to support them. United States Health Club, Inc. v. Major, 182 F.Supp. 759 (D.C.N.J. 1960), reversed on other grounds, 292 F.2d 665 (3 Cir. 1961) cert. den. 386 U.S. 896, 82 S.Ct. 172, 7 L.Ed. 2d 92 (1961); Pinkus v. Reilly, 71 F.Supp. 993 (D.C.N.J. 1947), affirmed 170 F.2d 786 (3 Cir. 1948), affirmed Reilly v. Pinkus, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63 (1949).

Plaintiffs, Stein's, Stein's Mfg. Co., and Lou Stein, P.C., are all one and the same, being Louis Stein, a Physical Culturist, who owns and operates certain mail order businesses trading under those names. The plaintiffs shall be referred to in the singular. The complaint is that fraud order No. 66–51 issued February 14, 1966, by the Judicial Officer of the Postal Department, adopting the decision of the Hearing Examiner after plenary hearing, improperly denies him use of the United States Mails by intercepting his

mail matter and postal money orders drawn to his order in connection with his businesses.

The fraud order also directs the United States Postmaster at Woodbury, New Jersey, the named defendant, to hold all letters and other mail matter arriving at his office addressed to plaintiff, except that which is found to be unrelated to the enterprises in question; to stamp the word "fraudulent" on the mail so held; and then to return the stamped mail to the senders. The complaint attacks the fraud order as not being based upon any evidence of either fraud on the part of plaintiff or in connection with his use of advertising, nor on any evidence of intent to deceive the public.

Both parties have properly cross-moved for judgment upon the record made at the administrative level. Pinkus v. Reilly, supra.

An examination of the record discloses that the present proceedings were initiated by General Counsel's filing of a complaint alleging that plaintiff herein was engaged in a fraudulent scheme in violation of 39 U.S.C. § 4005,[1] in that he has been obtaining remittances of money through the use of the mails by means of false and fraudulent pretenses and representations in selling products called "Complemin", later renamed "Blood Building Pep Tablets", and "La Femme Skin Ointment". Testimony was taken

before a Hearing Examiner who made findings of fact and conclusions of Law, on July 29, 1965. He concluded that the allegations against plaintiff's advertisements in connection with the sale of "Complemin" pills and Stein's "Strength and Vigor Methods", as a package to men over forty years of age, while false, did not violate the statute. This conclusion was reached because the only evidence before him was opinion testimony on each side, neither of which established a universal scientific belief regarding the challenged promotion, with the result that the evidence was equated and could not, therefore, support a finding of fraudulent intent. However, the challenged use of "Blood Building Pep Tablets" and "La Femme Ointment" could *not* accomplish the feats attributed to them by plaintiff; this, plaintiff knew, as the record testimony demonstrates. Yet he persisted in his commercial promotion of these products and made use of the mails. The Hearing Officer concluded that plaintiff's own proof manifested intentional deceit, and demonstrated violation of the statute.

Review of the findings of fact and conclusions of law was sought before the Judicial Officer of the Postal Department. The final departmental decision, made by the Judicial Officer, was rendered February 14, 1966. It was in accord with the Hearing Examiner's, and in

1. § *4005. Fraudulent and lottery matter*
(a) Upon evidence satisfactory to the Postmaster General that any person is engaged in conducting a scheme or device for obtaining money or property through the mail by means of false or fraudulent pretenses, representations, or promises; or engaged in conducting a lottery, gift enterprise, or scheme for the distribution of money or of real or personal property by lottery, chance, or drawing of any kind; the Postmaster General may—(1) direct postmasters at the office at which registered letters or other letters or mail arrive, addressed to such a person or to his representative, to return the registered letters or other letters or mail to the sender marked 'fraudulent' or 'lottery mail'; and (2) forbid the payment by a postmaster to such a person or his representative of any money order or postal note drawn to the order of either and provide for the return to the remitters of the sums named in the money orders or postal notes. (b) The public advertisement by a person engaged in activities covered by subsection (a) of this section, that remittances may be made by mail to a person named in advertisement, is prima facie evidence that the latter is the agent or representative of the advertiser for the receipt of remittances on behalf of the advertiser. The Postmaster General is not precluded from ascertaining the existence of the agency in any other legal way satisfactory to him. (c) As used in this section and section 4006 of this title the term "representative" includes an agent or representative acting as an individual or as a firm, bank, corporation, or association of any kind.

parts deemed to be presently pertinent, stated the following:

"Neither Dr. Lenhoff nor Dr. Beloff [respective experts of the parties] maintained that Complemin would activate any sex ability * * *. I sustain the Hearing Examiner in his interpretation of the ads in this respect. The representations held out for Complemin are false but from the facts adduced at the hearing the intent to defraud is not sustained. Complainant's Exhibit F (a copy of which is attached hereto) calls attention to Blood Building Pep Tablets. The ad goes on to say (referring to MEN—WOMEN in large letters) 'If you want a happy home life and need to feel younger and stronger in fulfilling your home obligation—send for your FREE SUPPLY today.' If a man responded to this ad he was sent the Blood Building Pep Tablets along with the instructions (the methods) in the use of cold water applications to the male genital organs, and the method used for mental concentration on sex. But if a woman responded to the ad she was sent only the Blood Building Pep Tablets. It was brought out in the testimony that Complemin and Blood Building Pep Tablets are one and the same thing. Counsel for Respondent maintains this ad does not refer to sex, but I believe that it does. Furthermore, I believe that the average person would so interpret it. Since both the doctor for the Complainant and the doctor for the Respondent testified that Complemin would not activate any sex ability and since Blood Building Pep Tablets are the same as Complemin the representations set out in Complainant's Exhibit F are fraudulent. With Mr. Stein's knowledge of Complemin which he received from Dr. Beloff he knew the ad on Blood Building Pep Tablets would not do what it says it will. There is a clear intent to defraud.

"Complainant's Exhibit D sets out the Respondent's ad inviting the attention of women. On the right side of the ad is a good-looking young woman with large breasts. The ad says:

WOMEN! YOU TOO CAN DEVELOP A MORE EXCITING, ALLURING BODY

FREE 30 DAY TRIAL

Bring out your hidden beauty * * * We'll send you (NO OBLIGATION) a 30 day supply of LA FEMME SKIN OINTMENT (Vitamin Fortified) and methods. See for yourself. Please enclose 25¢ for postage and handling. STEIN'S, Box 4–375, Woodbury, New Jersey.

"Dr. Kenneth D. Campbell, whose qualifications cannot be challenged, was called as the complainant's [Postal Department at the administrative hearing] witness. In answer to the questions asked about the instructions accompanying the product for the massage of the female breasts with the La Femme Skin Ointment with 15 strokes upwards on the underside of the breast and 15 strokes on the upperside of the breast and after the massaging to take 7 deep breaths, Dr. Campbell said it was dangerous to massage the female breast and that he never recommended it because the breast is the site of one of the two most frequently occurring cancers in the female—Tr. 209—that it was ill advised medically to traumatize a pre-malignant or malignant lesion. Dr. Campbell referred to reports from literature in the various cancer institutes. He went on to say that 'You can say with a fair degree of medical certainty that the traumatization of a cancerous lesion in an animal will cause its spread; the same thing will ensue in a human being.' * * * Tr. 175. He said that never in his practice did he ever recommend any manipulation of the female breast. He also stated that he knew of no doctor who held a contrary view; that the views he expressed were in conformity with the universality of medical opinion.—Tr. 212.

"Dr. Beloff testified for the Respondent relative to La Femme Skin Oint-

ment. He did not agree with Dr. Campbell, the witness for Complainant. He said he knew of no scientifically proven basis for a statement that massaging of a female breast will cause the spread of any latent or incipient malignancy that might exist. He also said that his opinion is in accord with the universal opinion of medical men.

"Dr. Campbell went on to say that deep breathing could help the chest cavity but that the size of the female breasts largely depend upon heredity. Dr. Beloff said that the deep breathing improves the posture so increases the size of the chest cavity and firms up tissues and the breast may be pushed forward. The seven deep breaths per day are not sufficient to enlarge the chest cavity so that female breasts may be more prominently displayed.

"I agree with the Hearing Examiner when he says 'Similarly, the matter of "Blood Building Pep Tablets" as charged in subparagraphs j. and k. of the amended complaint appears to have been sustained by the evidence, including, of course, the exhibits mentioned above. There is no evidence that Complemin is a blood-building substance, and the evidence on behalf of each party hereto negates any value as as a sexual stimulant. The fact that the ingestion of this product without any additional method is represented to female users in order to have "a happy home life, and need to feel younger and stronger in fulfilling your home obligation" (**Exhibit "F" to the complaint) is patently false, and as in the case of La Femme, supra, is concluded to be fraudulent.' "

Plaintiff's background, as developed before the Hearing Examiner, provided a substantial and sufficient basis for some insight by the Department into the purpose and intent of plaintiff's advertisements and business. He stated at the hearings, that about nine years ago, he was a sick man with many problems—problems of family and sex relationship with his wife; he was losing weight.

Then he discovered a book on physical culture (Charles Atlas Physical Culture Course), undertook the exercises which it described, added vitamins to his program, and applied cold water applications for stimulation and mental concentration. Such concentration, he related, when placed upon past sexual relations improved his lot with his wife, and made him a happy man again at the age of thirty-seven. Although plaintiff had limited education and had not completed a trade school course, he worked as an electrician in the U. S. Navy Yard. So beneficial had his physical culture program proved in his own sex life, that he desired to share what he conceived to be his discovery and good fortune with his friends at work, who informed him that it helped them also. Plaintiff testified that he realized that his experiences in the development of a program for greater marital vigor were such as should be shared with others, and that at the same time, could well provide him with a livelihood. So he consulted with Dr. Beloff, a medical physician, of Philadelphia, Pennsylvania, with whom he was both patient and friend. He described his program and experiences to Dr. Beloff and explained that he wanted to share his discovery in order to help others; he inquired about use of a vitamin, and the one recommended by the physician was "Complemin"; he also consulted Dr. Beloff about a "physical method", and the doctor after examining a physical culture manual, selected certain items that he thought would be companion aids to the plaintiff's, the "Stein Method". Additionally, the promotional advertisements in question were discussed with and approved by Dr. Beloff.

Dr. Harry Beloff testified before the Examiner on behalf of plaintiff, and corroborated plaintiff's testimony regarding the origin and history of the "Stein Method". He stated that they did discuss possible benefits of cold applications to the male genital organs and the effects of memory recall of sex incidences; that "Complemin" was an old product listed in the Physicians' Drug and Sup-

ply Catalogue; and that he had, on occasion, advised some patients to use such cold applications as were described in plaintiff's business advertisements.

Neither Dr. Lenhoff, nor Dr. Beloff, asserted that "Complemin" would activate any sex ability, nor stimulate dormant sex drive. And as was developed by the testimony, "Complemin" and "Blood Building Pep Tablets" are one and the same thing, therefore, the expert testimony before the Examiner applies equally to both. The advertisement seeking public attention for the "pep" pills is as follows:

### "MEN—WOMEN

You can try it before you buy it FREE 30 day supply of BLOOD BUILDING PEP TABLETS is yours for the asking. If you want a happy home life and need to feel young and stronger in fulfilling your home obligation— send for your FREE SUPPLY today * * * SPECIFY FOR MALE or FEMALE. PLEASE ENCLOSE 25¢ TO COVER POSTAGE AND HANDLING. No other obligation.
STEIN'S, P. O. BOX 8–373S
Woodbury, New Jersey." [2]

If a man responded to this advertisement, the "Blood Building Pep Tablets" were mailed, together with instructions, the "Stein Method", for the use of cold compresses on the male genitals and the mental concentration on memory recall of past sexual experiences. However, if a woman responded she received only the "pep" tablets.

Plaintiff knew that these tablets would not accomplish the feats in marital home relationship attributed to them by him in his advertisements. There was substantial evidence in the record before the Examiner and Judicial Officer for the determination of intent to defraud under the law.

So too, with "La Femme Ointment". The advertisement is set forth in the Department Decision quoted above. Reference to the upper right corner of the advertisement will reveal a photograph of a scantily clad, seductively voluptuous female model, endowed with a most generous upper torso. Implicit in the advertisement and accompanying photograph is the clear, unequivocal inference that by use of plaintiff's product and method (although the method was not described in the advertisement, but forwarded to the inquirer) the user could obtain the endowments of the model. The instructions for daily use of "La Femme Ointment" are quite extensive directing, among other things, fifteen manipulative hand strokes from the underside of the breast upward, followed by fifteen similar strokes on the upper side, with three drops of "La Femme Ointment" to be applied for the massage of each, after which "7 deep breaths, filling the chest cavity to its maximum each time" are to be taken.

The only evidence produced on behalf of plaintiff at the hearing was that the skin ointment had value solely as an emollient to prevent friction during massage; that he knew the ointment had neither dermotological nor therapeutic values. His assertion, and Dr. Beloff's conclusion, that the methods of massage and breathing would expand the chest cavity, thus pushing the breasts forward thereby making them more outstanding, is a medical farce advanced in support of plaintiff's promotion of a commercial enterprise, as concluded by the Judicial Officer.

Testimony of Kenneth D. Campbell, M. D., on behalf of the Postal Department, was to the effect that "La Femme Oint-

2. It is of some significance that the advertisement uses the phrase "home life and need to feel younger and stronger in fulfilling your home obligation—". This does not point to domestic chores, i. e. watching television or going to the movies with one's wife as sought to be explained by plaintiff's testimony. Nor is youth and strength essential to the accomplishment of non-essential chores of the home. Obviously, the reach of the advertisement is to isolate the concept of the primary relationship having to do with sexual relationships. It should be noted further that the reference is to "home obligation—". i. e. in the singular.

ment" had basic elements of liquid petrolatum, iodine, 7800 units of vitamin A and 1560 units of vitamin D, and that its only use would be as an emollient, which could adversely affect hypersensitive or allergic users. He further stated, that stroking of the breasts as directed in the "Stein Method" would not increase their size, but could result in mastatitis of an existing carcinoma of the breast, a site where many women are prone to malignancy. He concluded that such use, to which the massage was related, would prove a highly dangerous pursuit when advertised for general use by the female public.

Testimony of Dr. Beloff, to the extent that it was contrary to Dr. Campbell's, was rejected in the departmental decision. Credibility of witnesses, expert or otherwise, is always a factor in seeking a finding of fact and truth. There was sufficient evidence in the record displaying a close personal and doctor-patient relationship between plaintiff and Dr. Beloff, as well as demonstrating their close conjunctive efforts in programing the challenged enterprises, as to give a partisian coloration to such testimony, thereby warranting a cautious weighing of such self-serving declarations.

The Departmental Decision found "La Femme Ointment" to be a patently fraudulent inducement as advertised to the public; that plaintiff well knew that neither the product nor his method could accomplish the embellishments of the female body to which they pretended.

■■■ It seems inescapable, from an examination of this record that the Fraud Order was based upon substantial evidence that the "Blood Building Tablets" and "La Femme Ointment", each used in conjunction with plaintiff's "Stein Method", were fraudulent inducements directed to uninitiate purchasers, and that the plaintiff well knew and intended in both fact and law, use of the mails to accomplish these purposes contrary to the Mail Fraud Statute, 39 U.S.C. § 4005.

In the opinion of this Court, reviewing this record, such insight into the facts of this case is not only amply warranted on substantial evidence, but most clearly, reasonably and intelligently justified. The Departmental Decision is based both upon scientific opinion having universality of reasonably certain medical acceptance, and judicious rejection of the preposterous propositions and explanations offered by plaintiff and his expert witness. Reilly v. Pinkus, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63 (1949). The test in cases of alleged fraudulent advertisements is as stated by the Supreme Court, Donaldson v. Read Magazine (1948) 333 U.S. 178, at page 189, 68 S.Ct. 591, at page 597, 92 L.Ed. 628.

> "Questions of fraud may be determined in the light of the effect advertisements would most probably produce on ordinary minds."

And as amplified in the case of P. Lorillard v. Federal Trade Commission, 186 F.2d 52, 58 (4 Cir. 1950):

> "In determining whether or not advertising is false or misleading within the meaning of the statute, regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which it might reasonably be expected to have upon the general public. 'The important criterion is the net impression which the advertisement is likely to make upon the general populace.'"

The Judicial Officer of the Postal Department was undoubtedly mindful of the law of fraud under the statute in question, as well as the criteria set forth in the foregoing decisions. His determination and the ensuing order were lacking in caprice and arbitrariness; his action was manifestly proper as based upon substantial evidence and should be sustained.

Therefore, the plaintiff's motion will be denied. The defendant's motion for Summary Judgment and dismissal of the complaint will be granted.

Counsel for defendant shall submit an appropriate order.