**UNITED STATES BIO–GENICS CORP.,**
Plaintiff,

v.

Robert K. CHRISTENBERRY, Postmaster, New York, New York,
Defendant.

United States District Court
S. D. New York.
June 2, 1959.

Bass & Friend, New York City, for plaintiff.

Arthur H. Christy, U. S. Atty., for the S. D. of New York, New York City, for defendant, William Scott Ellis, New York City, of counsel.

PALMIERI, District Judge.

These are cross-motions for summary judgment. Plaintiff seeks an injunction restraining the defendant from carrying out the terms of a fraud order issued by the Judicial Officer of the Post Office Department (Department).[1] The defendant seeks an order dismissing the complaint.

The undisputed facts are these: On July 15, 1957, a complaint was issued by an Assistant General Counsel of the Department, addressed to the Chief Hearing Examiner thereof, and recommending that a fraud order be issued against plaintiff. This relief was sought on an allegation that plaintiff "is now and has been obtaining remittances of money through the mails for a preparation called 'Royljel Formula 101' by means of false and fraudulent pretenses, representations and promises * * *." On September 4, 1957, the plaintiff, represented by counsel, executed, by its President, an "Affidavit of Discontinuance."[2] In this affidavit plaintiff agreed not to make certain representations and claims for its preparation "Royljel Formula 101."[3] The affidavit also stated:

"It is further agreed that if the Post Office Department receives evidence showing a resumption of this enterprise in violation of this affidavit, the Postmaster General or the Deputy Postmaster General or the General Counsel for the Post Office Department may issue [a fraud] order against the [plaintiff] * * * without further notice to the [plaintiff] of any such contemplated action, or, alternatively, if in his judgment the circumstances so require, he may impound the aforesaid mail and notify the person or concern to whom it is addressed that a hearing will be held to determine whether it shall be disposed of as stated above. * * * *"

On September 10, 1957, a Hearing Examiner, on the basis of the affidavit of discontinuance, ordered that further proceedings in the case be indefinitely postponed.

On August 28, 1958, the General Counsel of the Department sought a fraud order on the basis of an allegation that plaintiff "is now and has been obtaining remittances of money through the mails by means of false and fraudulent pretenses, representations and promises * * *." Plaintiff, again represented by counsel, although apparently not the same counsel as represented it in 1957, filed an Answer, alleging, as an affirmative defense, "that the sole right on the part of the [Department] at this time is to bring an action for any alleged breach of the [affidavit of discontinuance] if [the Department] should charge that the said agreement has been breached by [plaintiff]." On November 12, 1958, the General Counsel of the Department moved to dismiss the 1957 action "in view of decisions of the Federal Courts holding that fraud order actions by the Post Office Department under its rules of practice issued on May 17, 1954, are procedurally defective and, therefore void." On November 13, 1958, the Department's Judicial Officer denied this

1. The order was issued because of violations of Rev.Stat. §§ 3929, 4041 (1875), as amended, 39 U.S.C.A. §§ 259, 732.

2. The affidavit was submitted to the Department in conformity with the Rules of the Department for informal disposition of cases. 39 C.F.R. § 201.3 (1955). The same provision was carried forward, with only formal changes, when the Rules of the Department were amended in 1958. See text at notes 13–15, infra. 39 C.F.R. § 201.3 (Supp.1959). See also, Section 5(b) of the Administrative Procedure Act, 60 Stat. 239 (1946), 5 U.S.C.A. § 1004(b).

3. See note 6, infra.

motion. In the course of his opinion, he stated that plaintiff's counsel "opposed the motion stating that the [plaintiff] believed that the affidavit [of discontinuance] was a valid legal instrument and was not invalidated by the decisions of the Court of Appeals of the Second Circuit in Columbia Research Corp. v. Schaffer and Vibra-Brush v. Schaffer decided May 13, 1958,[4] which were the decisions upon which the [General Counsel] relied. * * *. I think it is prejudicial to have the [General Counsel] unilaterally attempt to withdraw the affidavit which he has accepted. The [plaintiff] has not attacked, and in this case the [plaintiff] admits, the legal adequacy of the affidavit. Had the [plaintiff] challenged the affidavit in this case and the [General Counsel] confessed error, a different situation would have been presented." The decision stated that the 1958 proceeding should be dismissed and that the procedures under the 1957 affidavit of discontinuance should be followed by the filing of a complaint charging a breach of the affidavit agreement.

On November 25, 1958, the General Counsel filed such a complaint and on the same date the Judicial Officer of the Department found that the affidavit agreement had been breached and accordingly issued a fraud order. It is that order which is the subject of the present motions.

■ Plaintiff argues that the proceedings by which the Judicial Officer issued the instant order violate the provisions of the Administrative Procedure Act, 60 Stat. 237 (1946), as amended, 5 U.S.C.A. §§ 1001–1011; and that, therefore, the order is void. The Government confesses the premise but it urges that the conclusion does not follow. Since I believe that the Government's plea is well made I need not discuss the particulars of plaintiff's specifications of violations of the Act. It may be that the proceedings herein were not in accordance with the provisions of the Act; but unless these proceedings are governed by the Act, it does not follow that the order is void. Plaintiff specifically contends that the action of the Judicial Officer is not in accordance with Sections 3–5, 7, 8, and 11 of the Act, 60 Stat. 238–9, 241, 242, 244 (1946), as amended, 5 U.S.C.A. §§ 1002–1004, 1006, 1007, 1010. With the exception of Sections 3 and 4, each of these sections applies only in cases "required by statute to be determined on the record after opportunity for an agency hearing." Section 5, supra. Since, as I will discuss later, the affidavit of discontinuance validly waived plaintiff's right to a hearing, none of these sections applies.[5] Nor are the rules publication requirements of Sections 3 and 4 here applicable. The purpose of these requirements is to enable "third persons who must comply with orders of the 'agency' [to] know what they must meet." Columbia Research Corp. v. Schaffer, 2 Cir., 1958, 256 F.2d 677, 679–680. Here the procedures to be followed were spelled out in the affidavit of discontinuance. I conclude, therefore, that the provisions of the Administrative Procedure Act do not bar enforcement of this order.

■ Plaintiff's second point is that the Judicial Officer did not make a finding that plaintiff was carrying on its scheme with "intent to deceive." Reilly v. Pinkus, 1949, 338 U.S. 269, 276, 70 S. Ct. 110, 114, 94 L.Ed. 63. Again, the answer to this contention is to be found in the affidavit of discontinuance. It is there provided that a fraud order may be issued upon a finding that plaintiff is operating in violation of the affidavit agreement. The affidavit stipulated that

4. These decisions are reported at 256 F. 2d 677 and 256 F.2d 681.

5. It is possible that any hearing which the Department granted under the alternative procedure set forth in the affidavit would not be governed by the Administrative Procedure Act. In the face of plaintiff's waiver of its right to a hearing, any hearing granted would appear to be one on "special dispensation." Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 50, 70 S.Ct. 445, 94 L.Ed. 616.

plaintiff would not make certain claims for its preparation.[6] The Judicial Officer found that plaintiff was making such claims in violation of the affidavit agreement. Accordingly the issuance of the fraud order was permissible under the affidavit.

Plaintiff's claim that there was no evidence before the Judicial Officer that would prove a violation of the affidavit agreement, is without merit. Plaintiff's President has submitted an affidavit containing a conclusory allegation that its advertising material conforms to the agreement contained in the affidavit. Plaintiff does not dispute, however, that the material annexed to the General Counsel's 1958 complaint is its material. On the basis of that material the Judicial Officer found that plaintiff had violated its agreement not to make the first two statements set forth in note 6, supra, by making the following claims, among others: "Increase sexual vitality;" "my recent increase in sexual activity probably due to Royal Jelly formula." The Judicial Officer also found a violation of the agreement not to make the fourth statement set forth in note 6, supra, by the making of the following statement, among others: "Miracle Bullets to cure the ills of Old Age."

The Government does not claim that the plaintiff has waived the right to judicial review of the finding that the affidavit agreement has been breached. It is not necessary, in this case, to decide what weight is to be given to the agency's finding of a breach, or by what standard it is to be judged, for the finding of a breach is plainly correct. I further agree with the statement of the Judicial Officer that there are statements in the advertising material, other than those he mentions in his order, which violate the affidavit agreement.[7]

■ I turn now to the question which is largely dispositive of this case: whether the affidavit of discontinuance is valid.[8] What that question amounts to

---

6. The claims which it was agreed would not be made are that the preparation will:
   1. restore sexual virility to impotent men;
   2. restore youthful sex functions to women who have experienced a "change of life," or that it will restore fertility to women at the age of menopause;
   3. restore "worn out glandular activities in humans;"
   4. materially increase the life span; or
   5. "normalize growth in underdeveloped children."

7. Plaintiff's implication, in its Brief, that the claims it now makes are limited to claims concerning the effect of its preparation upon animals and insects, is not borne out by the record. In any event, it would strain ingenuousness to argue that the claims made concerning the animals and insects are not meant to strongly imply that the same claims are made concerning humans. Plaintiff was not peddling its preparation to zoologists or aviarists.

8. Plaintiff, in its Brief here, reiterates the position it took before the Department in 1958: that the affidavit agreement is valid. It evidently does this in an attempt to make it appear that its positions here and before the Department are consistent. Plaintiff now adds, however, that any provision of the affidavit which conflicts with the Administrative Procedure Act is void. In other words, plaintiff contends that the affidavit disposed of the 1957 charges by discontinuance, and provided that any subsequent charges should be processed according to the Act. The Department, on this theory, dropped its 1957 charges and merely reserved the right to proceed against future derelictions as it was entitled to do without any agreement.

Plaintiff also asserted, in its Answer to the 1958 Complaint, that the Department's sole right was to proceed against violations of the 1957 affidavit. This theory compounds the improvidence of the Department's acceptance of the affidavit, as plaintiff construes it, by insulating plaintiff from prosecutions for violations of the law which are not violations of the agreement. The affidavit provides, however, that "acceptance * * shall not be construed as an approval of any business which the [plaintiff] * * * may hereafter conduct * *." I need not comment further on plaintiff's curious construction of the affidavit, for the violations here charged are violations

Plaintiff also suggests that the Department be required to adopt the alterna-

is this: May a person, charged with a violation of law by an administrative agency, enter into an agreement with that agency, providing that the hearing on the charges will be discontinued, providing that he will not do certain acts, and providing that if he does those acts the agency may summarily impose sanctions upon him without regard to certain procedural safeguards to which the person would be otherwise entitled and without proof of certain items which would otherwise be required? What the plaintiff did, in effect, was avoid a finding on the charges against him in return for his agreement to follow a future pattern of conduct and his agreement to the imposition of sanctions if he deviated from that pattern. I know of no doctrine which prevents such an agreement. The legislative history of the Administrative Procedure Act indicates that its provisions can be waived, so long as the waiver is "entirely voluntary and without any manner or form of coercion." [9] I have set forth in the margin a few of the cases upholding similar waivers. [10] Having made such an agreement, having reaped the benefits thereof, [11] and absent any claim of involuntariness or coercion, may the person then insist that the waivers be disregarded? I think not. To permit such a *volte face* would be to destroy the efficacy of informal agreements with administrative agencies. [12] The plaintiff had two opportunities to secure its right to a hearing and to the benefits of the Administrative Procedure Act. The first was in 1957 when it filed, instead, the affidavit of discontinuance. The second was in 1958, when the Department proposed to file a new complaint. At that time, plaintiff successfully argued that the procedures under the 1957 affidavit should be followed. In this case, it seems to me that two times around the track are enough. Plaintiff's dilatory tactics should not be afforded any encouragement by this Court. N. L. R. B. v. Pure Oil Co., 5 Cir., 1939, 103 F.2d 497. This does not mean, of course, that plaintiff cannot, upon a showing of compliance with the affidavit agreement, have the fraud order modified or revoked. See 39 C.F.R. § 201.33 (Supp.1959).

Finally, plaintiff contends that, if it be held that it has waived its rights, the agreement must be strictly construed to limit the power of summary action granted therein to the three persons named in the affidavit: the Postmaster

---

tive method set forth in the affidavit, of notifying plaintiff of its purpose to enter a fraud order. Plaintiff does not say whether it would agree to the impounding of its mail upon such notification, as the affidavit provides. Its citation of Stanard v. Olesen, 1954, 74 S.Ct. 768 suggests that it would not, and that in urging adoption of the alternative procedure it would select only a portion of it. In any event, the affidavit plainly leaves the question of which of the two procedures therein provided shall be adopted, to the judgment of the Department. I may add that there is some question, in my mind, as to the issues which would be inquired into in such a hearing. See also, note 5, supra.

9. H.R.Rep. No. 1980, 79th Cong., 2d Sess. (1946), reprinted in Sen.Doc. No. 248, 79th Cong., 2d Sess. 233, 281 (1946).

10. Democrat Printing Co. v. F. C. C., 1952, 91 U.S.App.D.C. 72, 202 F.2d 298, 305 (waiver of objection that proceeding violated Section 5(c) of the Administrative Procedure Act); N. L. R. B. v. J. L. Hudson Co., 6 Cir., 135 F.2d 380, 383–384, certiorari denied 1943, 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 439 (waiver of hearing and necessity to make finding); N. L. R. B. v. Gerling Furniture Mfg. Co., 7 Cir., 1939, 103 F.2d 663 (waiver of notice of application for enforcement order).

11. In addition to the saving of time and expense, the affidavit saved plaintiff from the possibility, in 1957, that a finding of false or fraudulent representations, with intent to deceive, would be made. The effect of such a finding upon plaintiff's business is obvious, even if a fraud order issued on the basis of such findings were to be later modified or revoked. See 39 C.F.R. § 201.33 (Supp. 1959); see also, Donaldson v. Read Magazine, 1948, 333 U.S. 178, 181–182, 68 S.Ct. 591, 92 L.Ed. 628.

12. N. L. R. B. v. J. L. Hudson Co., supra, note 10, 135 F.2d at page 384.

General, the Deputy Postmaster General, and the General Counsel of the Department. Plaintiff's contention in this regard must be viewed in light of the fact that the officers named in the affidavit were all of the officers of the Department who then had power to issue final agency orders.[13] After the affidavit's execution, the Court of Appeals for this Circuit strongly indicated that the General Counsel could not be vested with power to issue final agency orders because of the provisions of the Administrative Procedure Act.[14] Thereafter the Department's Rules of Procedure were amended, and the power to issue final agency orders, formerly vested in the General Counsel, was transferred to the Judicial Officer.[15] It appears to me that a fair reading of the affidavit requires that it be interpreted to provide that the powers therein granted were to be exercised by the officials who had the power to issue final agency orders. This interpretation is in accord with plaintiff's reasonable contention that the summary powers conferred by the affidavit were not to be exercised by any officer or employee of the Department, such as the Hearing Examiners who may issue initial orders. When the power to issue final agency orders was transferred from the General Counsel to the Judicial Officer the power to act under the affidavit followed.

■ Plaintiff argues, however, that the delegation to the Judicial Officer of power to issue final orders is invalid. Reliance for this argument is placed upon the decision in Borg-Johnson Electronics, Inc. v. Christenberry, D.C.S.D. N.Y.1959, 169 F.Supp. 746, in which the Court held that the Judicial Officer could not, because of the requirements of Section 7(a) of the Administrative Procedure Act, be authorized to conduct agency hearings. Valid delegation of the power to make a final agency decision is not limited, however, to those who may be delegated to conduct hearings.[16] Nor are there mingled in the Judicial Officer's powers the prosecuting and judicial func-

13. The delegation to the Deputy Postmaster General of the power to issue final agency orders is set forth in Rule 821.2.a of the Department's Rules, most recently published at 23 Fed.Reg. 4011 (1958). See also, 39 C.F.R. § 201.24(h) (1952); Columbia Research Corp. v. Schaffer, supra, note 4, 256 F.2d at page 679.

14. Columbia Research Corp. v. Schaffer and Vibra-Brush Corp. v. Schaffer, both supra, note 4.

15. 39 C.F.R. §§ 201.17, 201.29(g) (Supp. 1959). See also, Rule 821.7 of the Department's Rules, 23 Fed.Reg. 6888 (1958).

16. "In single headed departments and agencies, like the Post Office * * * the Committee recommends that all pretense of consideration of each case by the agency head be abandoned and that there be created either boards of review * * * or chief deciding officers who shall exercise the final power of decision. * * * It is obviously impossible for the Postmaster General to give personal consideration to every case of use of the mails to defraud * * *. In such instances the cases should be heard and initially decided by the hearing commissioners and be reviewed if necessary by designated officials who are charged with that responsibility and who will perform it personally."
Final Report of the Attorney General's Committee on Administrative Procedure 53 (1941). The text of a proposed bill was set forth at pages 191–202 of the Report. I know of no change from the provisions of that bill to the Administrative Procedure Act, as enacted, which would invalidate the views quoted above.
See also, Jay v. Boyd, 1956, 351 U.S. 345, 351 n. 8, 76 S.Ct. 919, 100 L.Ed. 1242; Glanzman v. Schaeffer, D.C.S.D. N.Y.1956, 143 F.Supp. 243, affirmed 2 Cir., 252 F.2d 333, judgment vacated, 357 U.S. 347 (1958). The holding in Glanzman that an affidavit filed at the trial sufficiently complied with the requirement of Section 3 of the Administrative Procedure Act that the agency Rules be published, was overruled in Columbia Research Corp. v. Schaffer, supra, note 4. In this case, however, the organization rules of the Department had been published, in so far as they affect the Judicial Officer's power to make a final agency decision, more than thirty days before he acted in this case. See 23 Fed. Reg. 4010, 4012 (1958), as amended, 23 Fed.Reg. 6888 (1958).

tions which caused the Court of Appeals, in the Columbia Research case, supra, to indicate that the General Counsel might not validly issue final agency orders. Borg-Johnson Electronics, Inc. v. Christenberry, supra, 169 F.Supp. at page 752. See also, the Department's Rules, cited in note 15, supra. The Judicial Officer may not be validly empowered to conduct hearings; but his delegated power to issue final orders is valid;[17] and, accordingly, I hold that he was empowered, under the affidavit, to issue the order in this case.

In sum, I hold that the affidavit of discontinuance is valid; that it established the procedures to be followed in this case; and that those procedures were here followed. Accordingly, the plaintiff's motion for summary judgment is denied; and the defendant's motion for summary judgment is granted.

So ordered.

---

17. Section 1(b) of Reorganization Plan No. 3, 63 Stat. 1066 (1949), 5 U.S.C.A. § 369 note.