**U. S. BIO–GENICS CORP., Plaintiff-Appellant,**

v.

**Robert K. CHRISTENBERRY, Postmaster, New York, N. Y., Defendant-Appellee.**

**No. 187, Docket 25780.**

United States Court of Appeals Second Circuit.

Argued Feb. 5, 1960.

Decided May 6, 1960.

Bass & Friend, New York City, for plaintiff-appellant.

S. Hazard Gillespie, Jr., U. S. Atty., Southern District of New York (Lola S. Lea, Asst. U. S. Atty., New York City, of counsel), for defendant-appellee.

Before MEDINA and WATERMAN, Circuit Judges, and MADDEN, Judge, U. S. Court of Claims.[*]

PER CURIAM.

Plaintiff is engaged in the sale of a preparation known as "Royljel Formula 101." At some time prior to July 16, 1957 the Post Office Department became interested in the claims made on behalf of Royljel Formula 101, which was then being sold through the mails. The history of plaintiff's dealings with the Post Office Department between July 16, 1957 and November 25, 1958, the date on which the fraud order here complained of was issued, is set forth in Judge Palmieri's excellent opinion, reported at 173 F.Supp. 645 (D.C.S.D.N.Y.1959). We affirm the dismissal of plaintiff's action to enjoin the fraud order. On appeal plaintiff's contentions are those which were made before Judge Palmieri, and we are content to adopt Judge Palmieri's discussion of these contentions.

Accordingly the judgment is affirmed on the opinion below.

MADDEN, Judge (dissenting).

The Post Office Department issued a complaint against the plaintiff which would, if the proceedings required by the Administrative Procedure Act had been followed, and if the complaint had been sustained, have ended in the issuance of a Fraud Order. The formal proceeding was discontinued when the plaintiff signed an agreement not to make, in future advertisements, certain specified representations about its product, "Royl-Jel Formula 101," and further agreeing that if the Post Office Department should, in the future, receive evidence of the violation of the agreement, then the Postmaster General or the Deputy Postmaster General or the General Counsel of the Post Office Department might issue a Fraud Order against the plaintiff without further notice.

The Department received notice that the plaintiff was violating the agreement. By that time the Department had concluded, because of certain court decisions, that the General Counsel did not have the power to issue final orders, and the Postmaster General had created a new office to which he had appointed an official called the "Judicial Officer," and had authorized him to issue final orders.

We have then a formal procedure interrupted and compromised by what was,

[*] Sitting by designation.

in effect, an agreement to entrust the decision as to future violations to the arbitrament of any one of three named officials. By the agreement, such future proceedings were removed from the requirements of the statutes, including the Administrative Procedure Act, 5 U.S.C. A. § 1001 et seq. Neither party suggests that it was not proper to make this arrangement to bypass the law. The plaintiff urges that it has been subjected to the arbitrament of an official not designated in the agreement. The Government says that since the newly created "Judicial Officer" had the authority to issue final orders, the plaintiff may be implied to have consented to a decision by him, as well as by the named officials.

If one agrees that his case should be decided by Jones, acting as an arbitrator, he has not authorized Smith or Brown to decide his case, even though either Smith or Brown would concededly do a better job of it than Jones. If one has agreed to waive all his right to due process of law, and submit his case to the decision of certain designated high officials, he should not, by a process of delegation, or unilateral substitution, find himself bound by the decision of some other official.

I would reverse.