UNITED STATES of America,
Plaintiff,

v.

PAPERCRAFT CORPORATION, a Pennsylvania Corporation,
Defendant.

Civ. A. No. 74–816.

United States District Court,
W. D. Pennsylvania.

March 11, 1975.

David Atkins, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

J. Tomlinson Fort, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

SNYDER, District Judge.

This is a proceeding for civil penalties instituted by the United States on behalf of the Federal Trade Commission (FTC) for violations of a final order requiring Papercraft Corporation (Papercraft), to divest itself of CPS Industries, Inc. (CPS). This action was brought under § 16(b) of the Federal Trade Commission Act, as amended, 15 U.S.C. § 56(b), pursuant to § 11(*l*) of the Clayton Act, as amended, 15 U.S.C. § 21(*l*), and §§ 5(*l*) and (m) of the Federal Trade Commission Act, as amended, 15 U.S.C. §§ 45(*l*) and 45(m).

On April 10, 1969, the Federal Trade Commission issued its Complaint against Papercraft challenging Papercraft's acquisition, on or about December 27, 1967 of CPS, as a violation of § 7 of the Clayton Act, as amended, 15 U.S.C. § 18. The proceeding resulted in a Commission order on June 30, 1971 requiring the divestiture. Upon review, the United States Court of Appeals for the Seventh Circuit on February 22, 1973 ordered modification in part the Commission's order, but affirmed the order of divestiture. Papercraft Corporation v. F. T. C., 472 F.2d 927 (7th Cir. 1973).

In accordance with the mandate of the Seventh Circuit, the Commission's modi-fied order was issued on June 6, 1973, and was duly served on the Defendant on June 16, 1973. It read in pertinent part as follows:

"IT IS ORDERED that respondent, The Papercraft Corporation, a corporation, and its officers, directors, agents, representatives, employees, subsidiaries, affiliates, successors and assigns, within six (6) months from the date of service upon it of this Order, shall divest, absolutely and in good faith, subject to the approval of the Federal Trade Commission, all assets, properties, rights and privileges, tangible and intangible, including, but not limited to, all plants, equipment, machinery, inventory, customer lists, trade names, trademarks and goodwill, acquired by The Papercraft Corporation as a result of its acquisition of CPS Industries, Inc., together with all additions and improvements thereto, of whatever description, made since the acquisition." [F.T.C. Docket No. 8779].

Neither party filed a petition for certiorari in the Supreme Court of the United States and the Commission's order became final by operation of law on July 6, 1973, as provided in § 11(i) of the Clayton Act, as amended, 15 U.S.C. § 21(i), and in § 5(i) of the Federal Trade Commission Act, as amended, 15 U.S.C. § 45(i).

Notwithstanding the final order of the Commission to divest itself of CPS within six months of June 16, 1973, the date of service of the order, or by no later than December 16, 1973, the Defendant failed to comply and continued in its failure to divest itself of CPS, or to submit a proposed plan for divestiture of CPS to the Commission for its approval. The Complaint asked for a mandatory injunction directing compliance with the modified order and for judgment to be entered against the Defendant in the sum of $10,000 per day

for each day of continuing violation, together with costs.[1]

Papercraft filed an Answer admitting the failure to divest, and in a Counterclaim alleged that FTC acted in excess of its statutory authority in denying Papercraft the right to a hearing on a Request for an Extension of Time, and acted arbitrarily and capriciously in failing to properly review Papercraft's petitions for modification of the deadline provisions of the Order. Papercraft also filed a Motion to Join Additional Parties, i. e., the Federal Trade Commission and the individual members of the Commission as Counterclaim Defendants, allegedly in accordance with Rules 13 and 19 of the Federal Rules of Civil Procedure. After briefing and argument, on December 15, 1974, this Court denied the defendant's Motion to Join Additional Parties finding that complete relief could be accorded the defendant on its Counterclaim in the instant proceedings, rendering unnecessary any further claim for relief against the Commission or its members. We held at that time: "While not necessary for the disposition of the Motion, it is noted that the Commission's denial of the Request for Extension has been considered to be a matter of the exercise of the discretion of the Commission and not the Court. United States v. Beatrice Foods Co., 344 F.Supp. 104, 117 (D.Minn.1972), aff'd., 493 F.2d 1259 (8th Cir. 1974), pet. for cert. pending in the U.S.Sup.Ct; United States v. Swingline, Inc., 371 F.Supp. 37, 45 (E.D.N.Y.1974)."

On November 15, 1974, the United States filed a Motion for Partial Summary Judgment, interlocutory in nature on the issue of whether or not defendant Papercraft was in violation of the Federal Trade Commission's order based on an affidavit of Charles A. Tobin, together with exhibits, reserving for later hearing the consideration of the appropriate penalty and other relief. In addition, the United States seeks to have summary judgment dismissing defendant Papercraft's Counterclaim. It was contended that the Counterclaim raised no issues of fact concerning Papercraft's violation of the order, and was thus not a defense in any way to the instant proceedings. The motions of the United States will be granted.

## ADMINISTRATIVE HISTORY

This proceeding was initiated by the Federal Trade Commission on April 10, 1969 (In The Matter of The Papercraft Corporation, FTC Docket No. 8779), challenging, as violation of § 7 of the Clayton Act, as amended, 15 U.S.C. § 18, Papercraft's acquisition on or about December 27, 1967 of CPS Industries, Inc. Hearings were held and on June 30, 1971, the Commission issued an Order requiring Papercraft to divest itself of CPS. As noted, United States Court of Appeals for the Seventh Circuit entered a final Order on February 22, 1973, modifying in part the Commission's order by deleting Paragraph IX (which concerned Papercraft's post-divestiture relationship with CPS customers) and affirming and enforcing the order as modified.

The Commission then modified its order and issued the same on June 6, 1973

---

1. Section 5(*l*) of the Federal Trade Commission Act, as amended, 15 U.S.C. § 45(*l*) provides in pertinent part as follows:

"(1) Any . . . corporation who violates an order of the Commission after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $10,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the Attorney General of the United States. Each separate violation of such an order shall be a separate offense, except that in the case of a violation through continuing failure to obey or neglect to obey a final order of the Commission, each day of continuance of such failure or neglect shall be deemed a separate offense. In such actions, the United States district courts are empowered to grant mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of such final orders of the Commission."

in accordance with the mandate of the Seventh Circuit which was served upon Papercraft on June 16, 1973. The Commission's final Order has not been modified or set aside.

Papercraft twice filed requests for nine month extensions of time in which to divest CPS. The first request was filed December 3, 1973, and the Commission rejected this request by letter dated January 16, 1974. Papercraft's second request was filed March 4, 1974, and rejected by the Commission on March 29, 1974.

Papercraft has not presented to the Commission a plan for divestiture of CPS by sale or spin-off nor has it divested CPS. Thus, on August 6, 1974, the Commission, pursuant to Section 16 of the Federal Trade Commission Act, certified the facts in this proceeding to the Attorney General (Exhibit 1 to Tobin affidavit), and the Attorney General thereafter directed a suit be instituted seeking civil penalties for Papercraft's continuing failure to comply with the Commission's Order, and for enforcement.

Papercraft's Answer admits all of the above matters except that it asserts that the Commission's errors in the handling of its requests for extensions were such that they constitute a defense to the enforcement of the Order, and thus, Defendant rather obliquely challenges the Commission's certification to the Attorney General.

### DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure, it is provided in pertinent part:

(a) *For Claimant.* "A party seeking to recover upon a claim . . . may, at any time after the expiration of 20 days from the commencement of the action . . . move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof."

It is noted that the question of appropriate relief, which is a matter solely within the Court's discretion, need not interfere with the disposition of defendant's liability by the granting of partial judgment. United States v. Beatrice Foods Co., 344 F.Supp. 104, 118 (D.Minn.1972), aff'd., 493 F.2d 1259 (8th Cir. 1974), cert. denied, —— U.S. ——, 95 S.Ct. 1350, 43 L.Ed.2d 438. As stated in Rule 56(c) of the Federal Rules of Civil Procedure:

". . . A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Thus, where there is no issue of a material fact to be tried, it is proper for the court to apply the law to the undisputed facts and to render summary judgment. Securities and Exchange Commission v. Geyser Minerals Corp., 452 F.2d 876 (10th Cir. 1971); Dale Hilton, Inc. v. Triangle Publications, Inc., 27 F.R.D. 468 (S.D.N.Y.1961) and Securities and Exchange Commission v. Payne, 35 F.Supp. 873 (S.D.N.Y.1940). While we are aware, as stated by Judge Coleman in Abraham v. United States, 465 F.2d 881 at 883 (5th Cir., 1972) that "experience shows that summary judgments suffer a rather high rate of mortality," in this instance the affidavits indicate that there is no genuine issue for trial on the matter of liability. Ward v. United States, 471 F.2d 667 (3rd Cir. 1973).

### THE ISSUE OF IMPOSSIBILITY

In its Answer, Papercraft sets forth that it has made a "good faith" effort to comply with the Commission's Order but, that compliance has been "impossible". Papercraft argues that if summary judgment is to be granted in this situation it will be denied the opportunity to defend by showing that it was impossible to comply within the time period set by the Commission: "In other words, Papercraft is solely at the mercy of the FTC and may offer no defenses in this Court except to the extent of requesting the Court to moderate the im-

412

position of penalty." (Defendant's Brief, p. 3). Papercraft then submits that this is unfair, unreasonable and inconsistent with these applicable laws and the Constitution of the United States.

As to the Commission's denial of Papercraft's request for a hearing, Papercraft contends that this is a violation of Rule 3.72(b)(3) of the FTC Rules of Practice (¶¶ 38, 42 and 45 of the Counterclaim). Carefully looking at the defense of Papercraft, it does not allege that it is actually "impossible" for it to comply, but rather that "changed economic conditions" (Answer at ¶ 15) have made it "impossible" [for Papercraft] "to sell CPS for a reasonable or fair price in light of the value of its assets, its record of earnings during the past several years, the substantial improvement in its marketing practices by reasons of decisions taken under Papercraft management, and its prospects for the future." (Answer at ¶ 14). It must be noted at this point that the Commission's Order did not require that Papercraft's divestiture of CPS be by sale, for the Order specifically provided for divestiture as well by such non-sale methods as spin-off (Commission's Order at ¶¶ 1 and 3). However, it is a clearly established principle of law as set forth in a previous Beatrice Foods Order (United States v. Beatrice Foods Company, 52 F.R.D. 14, at p. 18 (D.Minn.1971)) that:

". . . While good faith is not a defense to such an action, it is clearly relevant to the court's discretionary determination of the extent of civil penalties to be assessed under that provision. United States v. H. M. Prince Textiles, Inc., 262 F.Supp. 383, 388–389 (S.D.N.Y.1966); United States v. Vitasafe Corp., 212 F.Supp. 397 (S.D.N.Y.1962), aff'd. 352 F.2d 62 (2nd Cir. 1965). . . ."

■ Thus, Defendant's arguments as to the alleged difficulty or impossibility of divestiture may have carried weight in the request to modify the Order; but, regardless of this fact, they are not a defense to the action here. The Order

suggests nothing to indicate that Papercraft's divestiture was to be affected by the price it would receive, and its position, in being "forced" to sell, is not a defense. The Defendant's bargaining position may well have been weakened by virtue of the Order, but its position was the product of Defendant's earlier violations of the anti-trust laws. The Order itself is not under attack in this Court. United States v. Vitasafe Corporation, 212 F.Supp. 397 (S.D.N.Y. 1962) and United States Bio-Genics Corp. v. Christenberry, 173 F.Supp. 645 (S.D.N.Y.1959), aff'd., 278 F.2d 561 (2nd Cir. 1960).

What was said by Judge Lay in United States v. Beatrice Foods Company, *supra*, 493 F.2d at page 1272, is particularly applicable here:

"Finally, we note that the underlying statutory basis for an FTC cease and desist order is § 7 of the Clayton Act. Apropos to our discussion is the Supreme Court's discussion of that section in United States v. E. I. du Pont de Nemours & Co., 366 U.S. 316, 328–331, 81 S.Ct. 1243, 1251–1253, 6 L.Ed.2d 318 (1961):

It cannot be gainsaid that complete divestiture is peculiarly appropriate in cases of stock acquisitions which violate § 7. That statute is specific and 'narrowly directed,' . . . The very words of § 7 suggest that an undoing of the acquisition is a natural remedy. Divestiture or dissolution has traditionally been the remedy for Sherman Act violations whose heart is intercorporate combination and control, and it is reasonable to think immediately of the same remedy when § 7 of the Clayton Act, which particularizes the Sherman Act standard of illegality, is involved. Of the very few litigated § 7 cases which have been reported, most decreed divestiture as a matter of course. *Divestiture has been called the most important of antitrust remedies. It is simple, relatively easy to administer, and sure. It should always be in the fore-*

*front of a court's mind when a violation of § 7 has been found.* (Emphasis added)." [Footnote omitted]

## ALLEGED COMMISSION ERRORS IN HANDLING PAPERCRAFT'S REQUESTS FOR EXTENSIONS OF TIME

■ Papercraft argues that the Commission's failure to "provid[e] an articulated reasoned basis" for its denial of Papercraft's request for extension of the divestiture deadline violated the Commission's Rules, the Administrative Procedure Act, and the Due Process Clause of the Constitution and was arbitrary, capricious, and punitive in nature (Answer ¶¶ 22 and 24).

The Defendant's arguments are primarily related to § 3.2 of the Commission's Rules of Practice. 16 CFR § 3.2, however, specifically excludes compliance proceedings from the requirements established for adjudicative proceedings, and the courts have consistently recognized that compliance procedures of the Federal Trade Commission are *nonadjudicative* in nature. Robertson v. FTC, 415 F.2d 49, 54 (4th Cir. 1969). In *Robertson*, Judge Butzner stated the following which is a clear guide to the instant situation (at pp. 51–52):

"Section 5(b) of the Federal Trade Commission Act [15 U.S.C. § 45(b)] grants the Commission adjudicative authority. This section and the Administrative Procedure Act [5 U.S.C. §§ 554(b) and 556] provide for the right to notice, hearing, the opportunity to present evidence and to conduct cross-examination. The Administrative Procedure Act [5 U.S.C. § 557] and the Commission's rules [16 C.F.R. § 3.54(b)] require the Commission's decisions to include findings of fact, conclusions of law, and the reasons that support them. If the Commission finds the law has been violated, the adjudicative proceedings culminate in an order to cease and desist from using unfair methods of competition. The requirements of procedural due process found in these statutes

and rules apply not only to adjudication of fault, Morgan v. United States, 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129 (1938), but also to formulation of remedies in cease and desist orders. Jacob Siegel Co. v. FTC, 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888 (1946).

Section 6 of the Act [15 U.S.C. § 46] authorizes the Commission to require compliance reports to aid in enforcement of cease and desist orders. United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). The Commission's rules furnish a detailed guide for reporting compliance [16 C.F.R. § 3.61] and expressly provide that these proceedings are not adjudicative [16 C.F.R. § 3.2]. Neither the Federal Trade Commission Act nor the Commission's rules require formal hearings at the compliance stage. Moreover, the absence of such a requirement in the Federal Trade Commission Act makes the hearing provisions of the Administrative Procedure Act inapplicable to compliance proceedings. See LaRue v. Udall, 116 U.S.App.D.C. 396, 324 F.2d 428, 432 (1963), *cert. denied*, 376 U.S. 907, 84 S.Ct. 660, 11 L.Ed.2d 606 (1964)." [Footnotes omitted]

The granting of extensions of time for compliance with Orders of the Commission is governed by § 4.3(b) of the Commission's Rules of Practice, which states in pertinent part (16 C.F.R. § 4.-3(b)):

"(b) *Extensions.* . . . the Commission, for good cause shown, may extend any time limit prescribed by the rules in this chapter or by order of the Commission or an Administrative Law Judge . . ."

The language of this section is discretionary and there is no requirement that the Commission give reasons for the denial of a request for an extension. United States v. Swingline, *supra*, 371 F.Supp. at p. 45.

■ From the foregoing, it is obvious that one method for altering the time for compliance is through a request for extension of time. Such a request

is governed by § 4.3, and the Commission's response is "agency action . . . committed to agency discretion by law" under section 10 of the Administrative Procedure Act, 5 U.S.C. § 701; and it is not reviewable except as permitted by the Act under section 10(e), 5 U.S.C. § 706. Therefore, the right to an extension of time to comply with the Order rests in the discretion of the Federal Trade Commission, and under the facts in this case, is not reviewable. See, United States v. Swingline, *supra*, at p. 45.

The second method by which a Federal Trade Commission Compliance Order may be altered requires a formal petition to reopen the order pursuant to § 3.72 of the FTC's Rules which reads in part as follows (16 C.F.R. § 3.72(b)):

"(2) Whenever any person subject to a decision containing a rule or order which has become effective, or an order to cease and desist which has become final, is of the opinion that changed conditions of fact or law require that said rule or order be altered, modified, or set aside, or that the public interest so requires, such person may file with the Commission a petition requesting a reopening of the proceeding for that purpose. The petition shall state the changes desired, the grounds therefor, and shall include, when available, such supporting evidence and argument as will in the absence of a contest provide the basis for a Commission decision on the petition. Within thirty (30) days after service of such a petition, the Director of the appropriate bureau of the Commission shall file an answer.

(3) Whenever an order to show cause or petition to reopen is not opposed, or if opposed but the pleadings do not raise issues of fact to be resolved, the Commission, in its discretion, may decide the matter on the order to show cause or petition and answer thereto, or it may serve upon the parties (in the case of proceedings instituted under § 3.13, such service may be by publication in the Federal Register) a notice of hearing, setting forth the date when the cause will be heard. In such a case, the hearing will be limited to the filing of briefs and may include oral argument when deemed necessary by the Commission. When the pleadings raise substantial factual issues, the Commission will direct such hearings as it deems appropriate, including hearings for the receipt of evidence by it or by an administrative law judge . . ."

The Defendant here did not formally petition to reopen the proceedings and it can not now complain of the Commission's discretionary action denying its request.

Papercraft apparently recognized that § 4.3 decisions were not reviewable by this Court for it set forth in its Counterclaim that its requests were Rule 3.72 petitions to reopen this proceeding (Counterclaim ¶¶ 38 to 49). However, this contention is without merit.

It is noted that Defendant's first request for an extension of time was made by letter dated December 3, 1973, and there is no statement which could even arguably indicate that the request was intended to be a formal petition to reopen. The letter, dated January 16, 1974, from the Commission denying this request, clearly stated that the letter had been treated as a request for an extension of time.

Papercraft's second request (filed February 27, 1974) which was denied on March 29, 1974, was entitled a "Motion for Extension of Time" and began as follows:

"Papercraft Corporation ('Papercraft'), by its attorneys, respectfully requests an extension of time within which to complete the divestiture of CPS Industries, Inc. ('CPS') under Paragraph I of the Commission's Final Order."

The true intent of this document is indicated by the following statement (at p. 10 of the document):

". . . In the circumstances, a denial of the request for extension of

time will not further the Commission's ultimate objective of restoring competition in the giftwrap market.

\* \* \* \* \* \*

An extension of time within which to complete divestiture is a matter addressed to the exercise of the Commission's sound discretion. . . ."

In its February 27, 1974 request, Papercraft states (at p. 2):

"It is respectfully requested that the Commission's Order *be modified to extend the time* for divestiture for a period of nine months from the date originally specified for compliance, or until September 15, 1974. (Thus, a 6½ month extension from the date of this petition is requested). If the Commission believes it necessary, although we do not, Papercraft will not object to the imposition of a condition pursuant to which such extension would be revocable by the Commission following 21 days' notice to Papercraft if the Federal Trade Commission should find that Papercraft is not proceeding in good faith with divestiture efforts. . . ." (Emphasis added).

And at Page 11 of the same request, Papercraft states:

"For these reasons, Papercraft respectfully requests that Paragraph I of the Commission's Final Order *be modified to extend the time* for divestiture for a period of nine months, until September 15, 1974. Although Papercraft considers it unnecessary, it will not object to the imposition of a condition upon such extension pursuant to which the extension would be revocable following 21 days' notice to Papercraft if the Federal Trade Commission should find that Papercraft is not proceeding in good faith with divestiture efforts." (Emphasis added).

Defendant Papercraft now apparently argues that these two passing references in its second submission to the Order

being "modified to extend the time for divestiture", turns both of its requests into formal petitions to reopen pursuant to Rule 3.72.

From the above, it seems clear to the Court that the Defendant's two requests for extensions of time were just that and nothing more. They were treated as such by the Commission, and the Defendant was so informed. This discretionary action pursuant to Rule 4.3 is clearly not reviewable.

It is the conclusion of the Court that the Defendant in this action is in violation of the Final Order of the Federal Trade Commission, and the Plaintiff should be granted its request for partial summary judgment, interlocutory in nature on the issue of the Order violation. Further, since the Defendant's Counterclaim raises no issue of any material fact, the Plaintiff is entitled to judgment as a matter of law on the Counterclaim.

An appropriate order will be entered.