UNITED STATES of America, Plaintiff,

v.

PAPERCRAFT CORPORATION, a Pennsylvania Corporation, Defendant.

Civ. A. No. 74–816.

United States District Court,
W. D. Pennsylvania.

Jan. 19, 1977.

Thomas S. Brett, U. S. Dept. of Justice, Washington, D. C., David B. Atkins, Jr., Asst. U. S. Atty., Pittsburgh, Pa., Ronald B. Rowe, F. T. C., Washington, D. C., for plaintiff.

J. Tomlinson Fort, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Abe Fortas, Fortas & Koven, Washington, D. C., for defendant.

OPINION

SNYDER, District Judge.

This matter is before the Court on remand from the United States Court of Appeals for the Third Circuit, *United States v. Papercraft Corporation,* 540 F.2d 131 (3rd Cir. 1976), for reassessment of civil penalties under Section 11(*l*) of the Clayton Act, 15 U.S.C. § 21(*l*). We granted summary judgment on the violation of the Federal Trade Commission Order to the Defendant to divest itself of C.P.S. Industries, Inc., 393 F.Supp. 408 (W.D.Pa.1975), and we assessed penalties of $3,817,500.

On appeal, the Third Circuit required the application of the penalty provisions of the

Clayton Act [1] and not of the Federal Trade Commission Act [2] as used by this Court, and thus ordered that the penalty be reassessed. The Circuit added "certain suggestions which the district court will be free to accept or reject at its discretion." 540 F.2d at 140. These suggestions involved considerations that there were peculiar circumstances which might, upon reflection, lead the district court to apply less than the maximum daily penalty of $5,000 as it had in applying less than the maximum daily penalty of $10,000, and further, that the district court might be disposed to impose different daily penalties for those violations of the FTC's Divestiture Order before the Commission clearly indicated that it would seek civil penalties. Argument of counsel was heard and briefs considered.

We do not propose to again analyze the facts; these were detailed in our prior opinions. We do, however, need to discuss the principal contentions of the Defendant:

1. That this Court should reconsider "the good or bad faith of the defendants, the injury to the public, and the defendants' ability to pay." (See Judge Friendly's Opinion in *United States v. J. B. Williams Co.,* 498 F.2d 414, 438–39 (2d Cir. 1974);

2. That this Court should apply a far different penalty to the period before the notice by the Federal Trade Commission of its intent to seek penalties;

3. The amount of any fine imposed in other cases to date has been under $500,000 and this Court should consider this as precedent in making a final determination of a fine to be imposed here;

4. That now, the fine's purpose of forcing compliance has been fulfilled since divestiture is complete, and since C.P.S. was sold for a price less than that which could have been received had it been divested earlier, Papercraft has been disgorged of its illegally obtained profits.[3]

These contentions will be discussed seriatim.

### I.

This Court, in its Opinion of May 9, 1975, 393 F.Supp. 415, held that the background for the penalty in the case *sub judice* was the finding by this Court that the asking price for C.P.S. was so unreasonable as to discourage inquiries. Papercraft considered substantial offers as "frivolous" and demonstrated a failure to realistically approach the subject of divestiture. It was apparent to the Court that Papercraft did not exercise that good faith which the Divestiture Order required, and proceeded with attempts to sell C.P.S. as though no order existed.

---

**1.** 15 U.S.C. § 21(*l*) reads:

Any person who violates any order issued by the commission or board under subsection (b) of this section after such order has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $5,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the United States. Each separate violation of any such order shall be a separate offense, except that in the case of a violation through continuing failure or neglect to obey a final order of the commission or board each day of continuance of such failure or neglect shall be deemed a separate offense.

**2.** The Federal Trade Commission Act, 15 U.S.C. § 45(*l*) reads:

Any . . . corporation who violates an order of the Commission after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $10,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the Attorney General of the United States. Each separate violation of such an order shall be a separate offense, except that in the case of a violation through continuing failure to obey or neglect to obey a final order of the Commission, each day of continuance of such failure or neglect shall be deemed a separate offense. In such actions, the United States district courts are empowered to grant mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of such final orders of the Commission.

**3.** C.P.S. was divested during appeal for approximately $11 million.

The Third Circuit recognized that this Court had "identified the proper factors to be considered in assessing the civil penalty" and noted that we had not assessed the maximum penalty. Our original conclusion was:

"In considering Papercraft's financial ability to pay, and the harm caused by the delay, the degree of bad faith, and the benefits received by Papercraft, we do not think that the penalty assessed should be the maximum." 393 F.Supp. at 427.

No persuasive reasoning causes us to change our basic approach except, of course, the maximum of the statutory penalty under the Clayton Act changes the actual figures we are working with.

## II.

■ Papercraft has also asked this Court to consider the violation of the FTC Order as a palatable consequence of the business environment, where a violation of a mandatory Order must be balanced with trying to justify the divestiture to the stockholders. Such argument cannot prevail. The record here is replete with profit motivation of the corporate officers. They were aware of the consequences of their decisions.

As Judge Aldisert pointed out, this Court was correct in holding that:

"Papercraft violated the divestiture order when it failed to divest by December 16, 1973. Nothing in the subsequent correspondence between Papercraft and the FTC detracts from this view. Nor is this a case in which Papercraft argues that it received an informal extension of time in which to comply." 540 F.2d at 140.

Thus, penalties could be assessed from the date the original FTC Order required divestiture (December 16, 1973).

■ Counsel for the Defendant now argues with merit that it was not clear that civil penalties would be sought by the FTC during the period when the Commission did not have a majority for or against the requested extension of time for divestiture. With this in mind, we conclude that we will apply a limited penalty of $200 per day from December 16, 1973 to March 29, 1974. We do so believing that a company cannot ignore divestiture orders while extensions are requested but not granted.[4]

In our initial analysis of the fine, we referred to the factors considered in assessing civil penalties given in *United States v. Beatrice Foods Co.*, 493 F.2d 1259 (8th Cir. 1974), *cert. denied*, 420 U.S. 961, 95 S.Ct. 1350, 42 L.Ed.2d 438 (1975) and *United States v. Swingline*, 371 F.Supp. 37, 45 (E.D.N.Y.1974). By reference to the principles therein, we concluded and again so find that considering Papercraft's ability to pay, the harm caused by the delay, the degree of bad faith, and the benefits received by Papercraft, the penalty assessed should not be the maximum. We will impose a penalty of $3,500 per day for the period from March 29, 1974, to the date of our original penalty order—a period of 406 days for a total of $1,421,000.

## III.

As to the precedents of other fines, Judge Aldisert pointed out in the remand Opinion:

"That the largest penalty previously assessed in a divestiture case was $200,000 and that the largest penalty for violation of any FTC order was $465,000 . . . are simply irrelevant considerations, given the statutory maximum . . . ." 540 F.2d at 141.

Papercraft further argues that a penalty assessed in this case would affect the stockholders after corporate taxes as though it were twice as much. Such effect is taken into full account by this Court.

Looking to Judge Aldisert's acknowledgment of the Supreme Court's equation of public harm with the measure of the violator's profit, *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 95 S.Ct. 926, 42 L.Ed.2d 148 (1975), and further recognizing

---

4. Were we to hold otherwise, a request for an extension would always be treated as an automatic stay of a divestiture order.

the lack of direct evidence showing the economic effect of the harm inflicted upon the public by Papercraft's failure to timely divest, it should be noted that both tiers of the fine imposed here are less than the profit received by Papercraft during the period it was in violation of the Order. See 393 F.Supp. at 422.

## IV.

It is argued that the case before us is now in a different posture than when we considered the question of penalties before. At that time, Papercraft had not yet divested itself of C.P.S. and the fine which we imposed was, in part, to force compliance with the FTC Order. Now, divestiture is complete and one of the major purposes of the statute and the fine has been accomplished. Papercraft argues that since it disgorged C.P.S. for a price substantially lower than it originally had been asking, the fine should be reduced. Of course, had Papercraft exercised good faith in complying with the Order to begin with, it might well have received a higher price than it actually did in light of the offers it had.

Since part of the purpose of the fine which we imposed has been fulfilled, this justifies a reduction from the original amount, and we have therefore assessed a significantly lesser penalty. However, a consideration of the other factors discussed in this Opinion still dictate the imposition of a substantial penalty.

## V.

In summary, the total fine we are now imposing consists of $200 per day for the period from December 16, 1973 to March 29, 1974 (103 days for $20,600) and $3,500 per day for the 406 days thereafter to the May 9, 1975 Order ($1,421,000) for a total of $1,441,600.

An appropriate Order will be entered.